RALPH NADER *vs.* PHILIP CITRON & others.

Suffolk.    November 5, 1976. — March 8, 1977.

Present: HENNESSEY, C.J., QUIRICO, BRAUCHER, WILKINS, & LIACOS, JJ.

*Consumer Protection Act. Practice, Civil,* Motion to dismiss, Consumer protection case. *Pleading, Civil,* Complaint. *Corporation,* Officers and agents. *Fraudulent Conveyance.*

A plaintiff seeking relief under G. L. c. 93A, § 11, was not required to make a written demand on the defendant as a condition precedent to his bringing the action. [99-101]

Where a defendant conceded the sufficiency of a claim against him personally, a claim against him as a corporate officer on the same facts was also sufficient. [101-103]

Where a complaint stated a claim under G. L. c. 109A, §§ 4 and 7, a motion to dismiss was properly denied even if the complaint was insufficient to state a claim under c. 93A, the theory on which the plaintiff had sought relief. [103-105]

CIVIL ACTION commenced in the Superior Court on September 4, 1975.

The case was heard by *Lynch*, J., on motions to dismiss, and questions of law were reported by him to the Appeals Court. The Supreme Judicial Court granted a request for direct review.

*Joseph G. Abromovitz* for Philip Citron & another.
*Paul K. Connolly, Jr.,* for the plaintiff.

QUIRICO, J.    This case presents questions about the scope of G. L. c. 93A, § 11, which gives a private cause of

action to a person who is engaged in business and who suffers a loss as a result of an unfair or deceptive act or practice by another person also engaged in business. The section was added by St. 1972, c. 614, § 2, entitled "An Act further regulating unfair trade practices," and extended the provisions of the consumer protection act, G. L. c. 93A, to certain businessmen. The scope of c. 93A has come before us with increasing frequency. See *York* v. *Sullivan,* 369 Mass. 157 (1975), which collects many of our earlier opinions. See also *Kohl* v. *Silver Lake Motors, Inc.,* 369 Mass. 795 (1976). Yet in this burgeoning area, only *PMP Assocs.* v. *Globe Newspaper Co.,* 366 Mass. 593 (1975), and *PMP Assocs.* v. *Hearst Corp.,* 366 Mass. 600 (1975), have presented questions directly involving c. 93A, § 11. We thus deal largely with matters of first impression.

The plaintiff has brought a complaint against Philip Citron (Citron), Philip Citron, Inc. (P.C.I.), the officers and directors of P.C.I., Lordly & Dame, Inc. (Lordly), and the Hartford Accident and Indemnity Company on various theories of breach of contract, breach of fiduciary duty, breach of duties by corporate officers and directors, fraudulent conveyance, de facto merger, execution on a bond, and violations of c. 93A. Three counts of the nine count complaint are before us, and these three counts purport to deal solely with c. 93A.

Two of the defendants, Citron and Lordly, filed motions to dismiss these three counts under Mass. R. Civ. P. 12 (b) (6), 365 Mass. 754 (1974), for failure to state a claim upon which relief can be granted. A judge of the Superior Court denied these motions and reported questions of law to the Appeals Court pursuant to G. L. c. 231, § 111, and Mass. R. Civ. P. 64, 365 Mass. 831 (1974). We granted the plaintiff's application for direct appellate review. G. L. c. 211A, § 10 (A).

These motions to dismiss present the question of the legal sufficiency of the complaint as stating claims under G. L. c. 93A, § 11, and G. L. c. 109A, §§ 4, 7. In evaluating the denial of a motion to dismiss under rule 12 (b) (6), we follow the standard advanced by the United States

Supreme Court in *Conley* v. *Gibson*, 355 U.S. 41, 45-46 (1957): "In appraising the sufficiency of the complaint we follow, of course, the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Furthermore, the allegations of the complaint, as well as such inferences as may be drawn therefrom in the plaintiff's favor, are to be taken as true. *Balsavich* v. *Local 170, International Brotherhood of Teamsters*, 371 Mass. 283 (1976). *Druker* v. *Roland Wm. Jutras Assocs.*, 370 Mass. 383, 385 (1976). *Charbonnier* v. *Amico*, 367 Mass. 146, 152-153 (1975). We summarize the facts alleged in the complaint from this perspective.

P.C.I. was a booking agency (defined in G. L. c. 140, § 180A) and engaged in the business of soliciting speaking engagements for its clients. Citron was at all relevant times the president, treasurer, and a director of P.C.I. About April 5, 1973, P.C.I. persuaded Nader to be a client. P.C.I. and Citron agreed to seek speaking engagements for Nader, to act as his agent for the collection of fees due him as a result of such lectures, to deduct a commission of ten per cent from the fees received, and to forward the balance directly to Nader.

P.C.I. and Citron solicited and secured speaking engagements for Nader, Nader delivered numerous lectures, and the resulting fees were sent to P.C.I. and Citron. Beginning about April 15, 1974, P.C.I. and Citron did not deduct commissions or send to Nader his fees. Instead, in violation of the agreement and their duties as agents and fiduciaries, P.C.I. and Citron commingled the fees with general corporate funds and spent all the fees received from Nader's speaking engagements. Nader has received neither the fees nor any accounting of the funds thus received by P.C.I. and Citron.

For a period of time, Lordly, another booking agency, considered the possibility of merging with P.C.I. When Lordly learned of P.C.I.'s corporate liability to Nader no merger occurred because Lordly expressly sought to avoid

such liability. Rather, Lordly hired Citron as an employee and had him bring the client and customer lists of P.C.I. to Lordly. These lists constituted all the assets of P.C.I., which Lordly obtained without assuming the liabilities of P.C.I. The motions to dismiss raise a procedural question as well as the question whether these recited facts give rise to liability under c. 93A, § 11.

1. *The demand letter.* The first reported question is whether the trial judge was correct in ruling that one seeking relief under G. L. c. 93A, § 11, need not make a written demand on a defendant for relief as a condition precedent to bringing an action for relief. We hold that the judge properly ruled that such a demand is unnecessary.

General Laws c. 93A, § 11, inserted by St. 1972, c. 614, § 2, applies to a "person who engages in the conduct of any trade or commerce . . . ." General Laws c. 93A, § 9, as amended through St. 1973, c. 939, on the other hand, encompasses consumers, defined singly as a "person who purchases or leases goods, services or property, real or personal, primarily for personal, family or household purposes." While the plaintiff is renowned for his zealous advocacy of the rights of consumers, there is no dispute that in this case he has sought relief under § 11 as a businessman.

The statutory scheme provides different procedures for consumers seeking relief under § 9 and businessmen seeking relief under § 11. Before an action may be initiated under § 9, the consumer must mail a written demand letter to a prospective defendant.[1] In *Slaney* v. *Westwood Auto,*

---

[1] General Laws c. 93A, § 9 (3), as amended through St. 1973, c. 939, provides: "At least thirty days prior to the filing of any such action, a written demand for relief, identifying the claimant and reasonably describing the unfair or deceptive act or practice relied upon and the injury suffered, shall be mailed or delivered to any prospective respondent. Any person receiving such a demand for relief who, within thirty days of the mailing or delivery of the demand for relief, makes a written tender of settlement which is rejected by the claimant may, in any subsequent action, file the written tender and an affidavit concerning its rejection and thereby limit any recovery to the relief tendered if the court finds that the relief tendered was reasonable in relation to the injury actually suffered by the petitioner. In all other cases, if the

*Inc.* 366 Mass. 688, 704 (1975), we explained a rationale for this requirement: "The demand letter serves a dual function. The first of these functions is to encourage negotiation and settlement by notifying prospective defendants of claims arising from allegedly unlawful conduct. . . . The second function of the letter is to operate as a control on the amount of damages which the complainant can ultimately recover if he proves his case."

In *Entrialgo* v. *Twin City Dodge, Inc.*, 368 Mass. 812, 813 (1975), we relied on the *Slaney* case to hold that "[a] demand letter listing the specific deceptive practices claimed is a prerequisite to suit [under § 9] and as a special element must be alleged and proved. . . . The purpose of the demand letter is to facilitate the settlement and damage assessment aspects of c. 93A and as such the letter and notice therein is a procedural requirement the absence of which is a bar to suit." See *York* v. *Sullivan,* 369 Mass. 157, 161-163 (1975); *Baldassari* v. *Public Fin. Trust,* 369 Mass. 33, 41-42 (1975).

Section 11 provides a different procedure for achieving the same objectives of facilitating settlement and fixing damages. After the complainant has brought his action, "[t]he respondent may tender with his answer in any such action a written offer of settlement for single damages. If such tender or settlement is rejected by the petitioner, and if the court finds that the relief tendered was reasonable in relation to the injury actually suffered by the petitioner,

court finds for the petitioner, recovery shall be in the amount of actual damages or twenty-five dollars, whichever is greater; or up to three but not less than two times such amount if the court finds that the use or employment of the act or practice was a willful or knowing violation of said section two or that the refusal to grant relief upon demand was made in bad faith with knowledge or reason to know that the act or practice complained of violated said section two. In addition, the court shall award such other equitable relief, including an injunction, as it deems to be necessary and proper. The demand requirements of this paragraph shall not apply if the prospective respondent does not maintain a place of business or does not keep assets within the commonwealth, but such respondent may otherwise employ the provisions of this section by making a written offer of relief and paying the rejected tender into court as soon as practicable after receiving notice of an action commenced under this section."

then the court shall not award more than single damages."
G. L. c. 93A, § 11, inserted by St. 1972, c. 614, § 2. This
statutory procedure is self-explanatory and does not con-
tain any provision for a preliminary demand letter.

Whatever the merits of implying the demand letter
scheme of § 9 into § 11, as urged by the defendants, we find
no support for such implication in the language and struc-
ture of § 11. In another context we have stated that "the
provisions of G. L. c. 93A, § 9, . . . *though not applicable
to an action under § 11,* provide a useful analogy." *J. & J.
Enterprises, Inc.* v. *Martignetti,* 369 Mass. 535, 541 (1976)
(emphasis added). Yet analogies, whatever their utility,
do not form a basis for the judicial rewriting of statutes;
the demand letter procedure is simply not mandated by
§ 11. Nor does this difference in statutory treatment be-
tween businessmen and consumers approach a denial of
equal protection. *Commonwealth* v. *Henry's Drywall Co.,*
366 Mass. 539, 545-546 (1974). *New Orleans* v. *Dukes,* 427
U.S. 297 (1976). *Williamson* v. *Lee Optical Inc.,* 348 U.S.
483, 487-488 (1955). We therefore answer the first question
affirmatively.

2. *Count three.* The second reported question is
whether the trial judge correctly denied the motion of
Citron to dismiss count three of the complaint for failure
to state a claim upon which relief could be granted. This
count alleges that Citron, as president, treasurer, and a
director of P.C.I., engaged in "an unfair or deceptive act or
practice" under c. 93A, §§ 2, 11, by violating his alleged
agreement with the plaintiff and his fiduciary duty to him
by "co-mingling and spending as [his] own the funds [he]
received in payment of the Plaintiff's lectures, and . . .
fail[ing] to make the agreed upon payments to . . . [the
plaintiff]." While Citron argued in his brief that these
facts do not state a claim, his counsel conceded the suffi-
ciency of the count at oral argument before this court.
Since Citron now agrees that count three constitutes a
valid claim under c. 93A, sufficient to withstand a motion
to dismiss, we need not answer the second question.

3. *Count six.* The third reported question is whether

the trial judge correctly denied Citron's motion to dismiss count six of the complaint for failure to state a claim. Citron did not expressly waive his argument as to count six, but his concession of the sufficiency of count three bears on this argument and requires a comparison of the two claims.

Count three asserts a claim against Citron and describes him as the president, treasurer, and a director of P.C.I. No other officer or director is joined. This count asserts that Citron was the individual who solicited and handled business with the plaintiff, who violated an agreement with him and violated a fiduciary obligation to him. There is no claim of dereliction in the performance of Citron's duties as a corporate officer and director.

Count six contains the same factual predicate as count three, and the same allegations of an unfair or deceptive practice under G. L. c. 93A, but adds one new element. An additional officer and five other directors of P.C.I. are joined as defendants. Furthermore, all the officers and directors of P.C.I. are alleged to have engaged in an unfair and deceptive act when they allowed the corporation to commingle and spend funds belonging to the plaintiff.

Citron alone filed a motion to dismiss, and Citron alone is before the court. It is therefore unnecessary to explore the validity of this claim against the other officers and directors of P.C.I. Citron, however, stands in substantially the same position as to count six as he does as to count three. In count three, Citron is alleged to be the person who personally commingled and spent the plaintiff's funds. In count six, Citron is alleged to have violated a duty to the plaintiff by permitting the corporation to commingle and spend the plaintiff's funds. Citron is not immunized as an officer and director of a corporation for the acts he is alleged to have committed personally. *Refrigeration Discount Corp.* v. *Catino,* 330 Mass. 230, 235 (1953). Cf. *Buck* v. *Clauson's Inn at Coonamessett, Inc.,* 349 Mass. 612, 614-615 (1965). Citron's concession of the sufficiency of count three is thus equally applicable to count six. Citron as actor

in count three does not avoid liability by putting on the cloak of corporate officer in count six.

This analysis accords with that of the Federal courts in interpreting the scope of the corresponding § 5 (a) (1) of the Federal Trade Commission Act [15 U.S.C. § 45 (a) (1) (Supp. 1974)]. General Laws c. 93A, § 2 (*b*), provides that these Federal court decisions shall serve as a guide and source of law for our decisions under § 11. Federal Trade Commission orders binding corporate officials have been upheld, particularly where the individual operated or controlled the corporation, and had knowledge of unlawful acts. *Thiret* v. *FTC*, 512 F.2d 176, 181-182 (10th Cir. 1975). *Dlutz* v. *FTC*, 406 F.2d 227 (3d Cir.), cert. denied, 395 U.S. 936 (1969). *Guziak* v. *FTC*, 361 F.2d 700, 704 (8th Cir. 1966), cert. denied, 385 U.S. 1007 (1967).

Generally, the corporate officers have sought to evade individual liability and to shift responsibility to the corporation. Here Citron admits that count three states a claim against him as an individual, yet apparently seeks to argue that count six fails to state a claim against him as a corporate officer. This bifurcation cannot be maintained in these circumstances. Just as the Federal cases hold corporate officers liable for their participation in unfair and deceptive practices, so do Citron's acts as an individual (count three) afford the basis of his liability as an officer (count six).

By reason of Citron's concession of the sufficiency of count three, and the relation of the allegations in counts three and six, we hold that the trial judge correctly denied Citron's motion to dismiss count six of the complaint.

4. *Count seven.* The final reported question is whether the trial judge correctly denied Lordly's motion to dismiss count seven of the complaint. This count alleges that Lordly, as part of a scheme to avoid assuming the debt that P.C.I. owed to the plaintiff, obtained the client and customer lists of P.C.I., that corporation's only assets, without paying any consideration therefor. The parties have briefed and argued the question whether this con-

duct, if proved, would constitute "an unfair or deceptive act or practice" under G. L. c. 93A, §§ 2, 11, but that issue need not be decided to resolve the controversy before us.

The plaintiff has referred to count seven as one alleging an unfair practice under G. L. c. 93A. Our rules require "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Mass. R. Civ. P. 8 (a) (1), 365 Mass. 749 (1974). Decisions under the analogous Federal rule hold that a complaint is sufficient against a motion to dismiss if it appears that the plaintiff may be entitled to any form of relief, even though the particular relief he has demanded and the theory on which he seems to rely may not be appropriate. *Janke Constr. Co.* v. *Vulcan Materials Co.,* 527 F.2d 772 (7th Cir. 1976). *United States* v. *Howell,* 318 F.2d 162 (9th Cir. 1963). *Builders Corp. of America* v. *United States,* 259 F.2d 766, 771-772 (9th Cir. 1958). *Dotschay* v. *National Mut. Ins. Co.,* 246 F.2d 221, 223 (5th Cir. 1957). The outdated notion that the pleadings must proceed on a specific theory, and that recited facts will not be sufficient against a motion to dismiss if the theory is deemed inapplicable, is not the law of this Commonwealth. See 5 C.A. Wright & A.R. Miller, Federal Practice and Procedure § 1219 (1969) ; 2A Moore's Federal Practice par. 8.14 (2d ed. 1975); R. Field & B. Kaplan, Materials on Civil Procedure 344-347 (3d ed. 1973).

We must hence assess the denial of the motion to dismiss by referring to whatever legal theory might support that decision. In *Baldassari* v. *Public Fin. Trust,* 369 Mass. 33, 38-39 (1975), where claims asserted under c. 93A could have been read to include tort claims of false imprisonment and intentional infliction of emotional distress, we did not pass on those tort claims because they were not argued. In this case, to the contrary, the plaintiff asserts that count seven is sufficient under c. 93A largely because it states a claim under G. L. c. 109A, the fraudulent conveyance act. Therefore, the sufficiency of count seven under the fraudulent conveyance act becomes a relevant inquiry.

Count seven clearly states a claim under G. L. c. 109A,

§§ 4, 7. The allegations are that Lordly participated in a scheme whereby it received all the assets of P.C.I. without paying any consideration and with knowledge of P.C.I.'s liabilities to the plaintiff. These allegations, if proved, would constitute a conveyance without fair consideration rendering P.C.I. insolvent under § 4, or a conveyance made with actual intent to hinder, delay, or defraud creditors under § 7. E.g., *Citizens Bank & Trust Co.* v. *Rockingham Trailer Sales, Inc.*, 351 Mass. 457, 460 (1966); *Virta* v. *Mackey*, 343 Mass. 286, 290 (1961). Cf. *Goldstein* v. *Columbia Diamond Ring Co.*, 366 Mass. 835, 843-844 (1975).

Because the complaint states a claim under the uniform fraudulent conveyance act, the motion to dismiss was properly denied. It is therefore unnecessary to determine whether the complaint is sufficient under c. 93A.[2] Furthermore, what is an unfair act may be difficult to determine on the basis of the complaint alone. As we said in *Commonwealth* v. *DeCotis*, 366 Mass. 234, 242 (1974), "[t]he existence of unfair acts and practices must be determined from the circumstances of each case." The particular factual nuances of each case may require elaboration through discovery and development at trial.

Relief available under the fraudulent conveyance act would include setting aside the conveyance to satisfy the plaintiff's claim. G. L. c. 109A, § 9. The plaintiff seeks treble damages and attorneys' fees under G. L. c. 93A, § 11. Questions as to possible differences in relief under the two statutes are premature at this time. We therefore do not decide whether count seven states a claim under c. 93A.

The case is remanded to the Superior Court for further proceedings consistent with this opinion.

*So ordered.*

---

[2] For the evolution of the law of fraudulent conveyances, see 1 G. Glenn, Fraudulent Conveyances and Preferences §§ 58-62 (rev. ed. 1940). See citations and prefatory note of draftsmen in 7 Uniform Laws Ann. 423 (Master ed. 1970 & Supp. 1976). For a recent discussion of the ideals underlying the prohibition against fraudulent conveyances, see Clark, The Duties of the Corporate Debtor to Its Creditors, 90 Harv. L. Rev. 505 (1977).