COMMONWEALTH vs. JUDITH STOWELL.

Worcester. January 6, 1983. — May 13, 1983.

Present: Hennessey, C.J., Wilkins, Liacos, Nolan, & Lynch, JJ.

*Adultery. Privacy. Public Policy. Constitutional Law,* Privacy, Police power.

General Laws c. 272, § 14, making the act of adultery a criminal offense, is not unconstitutional on its face as impinging on the fundamental right of privacy guaranteed by the United States Constitution. [173-175]

General Laws c. 272, § 14, may be applied to the conduct of consenting adults committing adultery in private, inasmuch as no fundamental personal privacy right implicit in the concept of ordered liberty guaranteed by the United States Constitution bars the criminal prosecution of such persons. [174-175]

General Laws c. 272, § 14, as applied to the conduct of the defendant, a married person who, in the rear of a van in a secluded wooded area, was arrested while engaged in sexual intercourse with a person not her spouse, was not unconstitutional as impinging on the fundamental right of privacy guaranteed her by the United States Constitution. [175-176]

COMPLAINT received and sworn to in the Central Worcester Division of the District Court Department on October 14, 1980.

On appeal to the jury session, a motion to dismiss was heard by *Greenberg, J.,* and questions of law were reported by him to the Appeals Court. The Supreme Judicial Court granted a request for direct review.

*Margaret H. Van Deusen* for the defendant.

*Jane Shepard,* Assistant District Attorney, for the Commonwealth.

LYNCH, J. The defendant is awaiting trial on a charge that she committed adultery in violation of G. L. c. 272,

§ 14.[1]  Prior to trial before a jury of six session in the District
Court, the defendant filed a motion to dismiss the com-
plaint on the grounds that the statute was unconstitutional
on its face and as applied to her conduct.  Without ruling on
this motion, the District Court judge, with the assent of the
parties, reported the case to the Appeals Court pursuant to
Mass. R. Crim. P. 34, 378 Mass. 905 (1979).  Subsequently,
we granted the defendant's application for direct appellate
review.

The defendant and the Commonwealth stipulated to the
following facts.  On October 13, 1980, at about 2 P.M.  Of-
ficers Richard Sandberg and Henry Arguijo of the
Worcester police department observed a woman, known to
them as Judith Stowell, motion to the driver of a van.  The
van stopped, Stowell had a short conversation with the
driver, and then she entered the van.  The officers followed
the van to South Worcester near the Auburn line where it
turned off Webster Place onto a dirt road, and, after pulling
off the dirt road, stopped in a secluded, wooded area near a
factory.  No one was in the nearby area except a boy on a
bicycle who asked the officers what they were looking for.
The officers said they looking for a van and the occupants.
The boy indicated he had seen the van but not its occupants.
The officers located the van, looked into the rear window,
and saw Stowell and the male driver having sexual inter-
course.  Both occupants were adults and told the officers
they were married but not to each other.  Both were ar-
rested and charged with adultery.

Following a bench trial in the District Court, the defend-
ant was convicted of adultery and was fined $50.[2]  The de-

---

[1] General Laws c. 272, § 14, as appearing in St. 1978, c. 379, § 7,
states: "A married person who has sexual intercourse with a person not his
spouse or an unmarried person who has sexual intercourse with a married
person shall be guilty of adultery and shall be punished by imprisonment
in the state prison for not more than three years or in jail for not more
than two years or by a fine of not more than five hundred dollars."

[2] At his bench trial, the male codefendant admitted to sufficient facts
for a finding of guilty.  The codefendant was also fined $50. He did not
appeal from this finding to the jury of six session.

fendant made a timely appeal to the jury of six session, and moved to dismiss the complaint. The judge then reported the following questions: (1) Is G. L. c. 272, § 14, unconstitutional on its face? (2) Is G. L. c. 272, § 14, unconstitutional as applied to the facts of the present case? (3) If G. L. c. 272, § 14, is constitutional does it apply to consensual acts between adults in private?

1. The defendant argues that the Massachusetts adultery statute is unconstitutional on its face because it violates the fundamental right of privacy guaranteed by the United States Constitution. The Constitution does not explicitly mention any right of privacy. However, the Supreme Court "has recognized that a right of personal privacy, or a guarantee of certain areas or zones of privacy does exist under the Constitution . . . [and is] founded in the Fourteenth Amendment's concepts of personal liberty and restrictions upon state action . . . ." *Roe* v. *Wade*, 410 U.S. 113, 152-153 (1973). Although the Supreme Court has not precisely defined what the right of privacy encompasses, the contours of this right are visible from the Court's individual decisions. The right includes the individual's interest in making certain decisions that fundamentally affect his or her person "free from unwarranted governmental intrusion." *Eisenstadt* v. *Baird*, 405 U.S. 438, 453 (1972). Among the "decisions that an individual may make without unjustified government interference are personal decisions 'relating to marriage, *Loving* v. *Virginia*, 388 U.S. 1, 12 (1967); procreation, *Skinner* v. *Oklahoma ex rel. Williamson*, 316 U.S. 535, 541-542 (1942); contraception, *Eisenstadt* v. *Baird*, 405 U.S. at 453-454; *id.*, at 460, 463-465 (White, J., concurring in result); family relationships, *Prince* v. *Massachusetts*, 321 U.S. 158, 166 (1944); and child rearing and education, *Pierce* v. *Society of Sisters*, 268 U.S. 510, 535 (1925); *Meyer* v. *Nebraska*, [262 U.S. 390, 399 (1923)].'" *Carey* v. *Population Servs. Int'l*, 431 U.S. 678, 684-685 (1977), quoting *Roe* v. *Wade, supra.* See also *Griswold* v. *Connecticut*, 381 U.S. 479 (1965) (right to use contraceptives in marital relationship).

These cases implicate two separate privacy interests. The first is the "individual interest in avoiding disclosure of personal matters." *Whalen* v. *Roe*, 429 U.S. 589, 599 (1977). The second is "the interest in independence in making certain kinds of important decisions." *Id.* at 599-600. The defendant claims that her decision to commit adultery is protected by this second strand of the privacy right found in those cases relating to marriage, procreation, and family relations. See *id.* at 600 n.26. See generally *Roe* v. *Wade*, *supra* (abortion); *Eisenstadt* v. *Baird*, *supra* (contraception); *Griswold* v. *Connecticut*, *supra* (contraception and marriage). The Supreme Court has never marked the "outer limits" of this right to make certain important decisions. *Carey* v. *Population Servs. Int'l, supra* at 684-685. Specifically, the Court has observed that it "has not definitively answered the difficult question whether and to what extent the Constitution prohibits state statutes regulating [private consensual sexual] behavior among adults." *Id.* at 688 n.5.[3] However, the Supreme Court decisions "make it clear that only personal rights that can be deemed 'fundamental' or 'implicit in the concept of ordered liberty,' *Palko* v. *Connecticut*, 302 U.S. 319, 325 (1937), are included in this guarantee of personal privacy." *Roe* v. *Wade, supra* at 152.

Whatever the precise definition of the right of privacy and the scope of its protection of private sexual conduct, there is no fundamental personal privacy right implicit in the concept of ordered liberty barring the prosecution of consenting adults committing adultery in private. Accord *Suddarth* v. *Slane*, 539 F. Supp. 613 (W.D. Va. 1982);

---

[3] We also have not yet decided this question under the Massachusetts Constitution. See *Commonwealth* v. *Balthazar*, 366 Mass. 298, 302 (1974). The defendant has made no argument in her brief about the effect of any right of privacy under the Massachusetts Constitution on a statute regulating private consensual noncommercial sexual behavior between adults. We take no position on whether the Massachusetts Constitution requires a different result or on the constitutionality of any such statute other than G. L. c. 272, § 14.

*Johnson* v. *San Jacinto Junior College,* 498 F. Supp. 555 (S.D. Tex. 1980); *Wilson* v. *Swing,* 463 F. Supp. 555 (M.D. N.C. 1978); *Hollenbaugh* v. *Carnegie Free Library,* 436 F. Supp. 1328 (W.D. Pa. 1977), aff'd, 578 F.2d 1374, cert. denied, 439 U.S. 1052 (1978). Therefore, the statute is not unconstitutional on its face.

2. Nor is the statute unconstitutional as applied to the defendant's conduct. The right of the State to regulate the institution of marriage under its police power is unquestioned where it does not infringe on fundamental rights. *Zablocki* v. *Redhail,* 434 U.S. 374, 396 (1978) (Powell, J., concurring). Cf. *Loving* v. *Virginia,* 388 U.S. 1 (1967) (right to marry); *Griswold* v. *Connecticut,* 381 U.S. 479 (1965) (right to use contraceptives in marital relationship). The Commonwealth has extensively exercised this power to regulate numerous aspects of the marriage relationship. See generally G. L. c. 207. Given this broad concern with the institution of marriage, the State has a legitimate interest in prohibiting conduct which may threaten that institution. See *Green* v. *Richmond,* 369 Mass. 47, 51 (1975) ("Massachusetts has a strong public interest in ensuring that its rules governing marriage are not subverted"); *French* v. *McAnarney,* 290 Mass. 544, 546 (1935) ("The Commonwealth has a deep interest that [marital] integrity is not jeopardized"). As the Supreme Court has stated: "Adultery is an offense against the marriage relation and belongs to the class of subjects which each State controls in its own way." *Southern Sur. Co.* v. *Oklahoma,* 241 U.S. 582, 586 (1916). In addition to prohibiting adultery by criminal statute, Massachusetts law also makes adultery a ground for divorce. See G. L. c. 208, § 1. We take judicial notice that the act of adultery frequently has a destructive impact on the marital relationship and is a factor in many divorces.

We are not unaware that the public policy against adultery is most often expressed in these divorce proceedings and that the crime of adultery is rarely made the subject of criminal prosecution. As our Appeals Court has noted in another context: "Despite widespread official knowledge of

such violations [of the adultery statute], prosecutions by law enforcement officials are essentially nonexistent. . . . It seems beyond dispute that the [statute] defining or punishing the [crime] of . . . adultery . . . [has] fallen into a very comprehensive desuetude." *Fort* v. *Fort,* 12 Mass. App. Ct. 411, 416-417 (1981). See *Loud* v. *Loud,* 386 Mass. 473, 476 n.2. (1982). However, as the Appeals Court further noted: "To recognize that fact is not to say that [this statute has] become invalid or judicially unenforceable. See 2 Sands, Sutherland Statutory Construction § 34.06 (4th ed. 1973). *District of Columbia* v. *John R. Thompson Co.,* 346 U.S. 100, 113-114 (1953)" (footnote omitted). *Id.* at 417. The failure to prosecute others is not presented by the legal questions reported in this case. The statute remains as a permissible expression of public policy. If any lack of prosecution of the crime of adultery indicates a general public disfavor with the statute, appropriate means exist to address such disfavor to the Legislature, which has the power to change or repeal the statute. See *Commonweath* v. *Brasher,* 359 Mass. 550, 558 (1971). In the absence of a constitutional violation, we have no power to invalidate the statute.

Accordingly, we answer the reported questions as follows: (1) G. L. c. 272, § 14, is not unconstitutional on its face; (2) G. L. c. 272, § 14, is not unconstitutional as applied to the facts of the present case; (3) G. L. c. 272, § 14, may be applied to consensual acts between adults in private.