### LORRAINE CAPAZZOLI *vs.* HARRY A. HOLZWASSER.

Middlesex. September 12, 1985. — March 21, 1986.

Present: HENNESSEY, C.J., WILKINS, LIACOS, ABRAMS, & O'CONNOR, JJ.

*Practice, Civil,* Complaint, Amendment, Motion to dismiss. *Public Policy. Husband and Wife. Contract,* For personal services, Validity, Implied.

A man's promise to support a woman, made in consideration of the woman's promise to abandon her marriage to another man, was unenforceable as violative of public policy; nevertheless, a woman seeking damages on the basis of such a promise was, in the circumstances, to be allowed to move for leave to amend her complaint to allege such other facts as might entitle her to relief. [158-161] ABRAMS, J., concurring with the result.

CIVIL ACTION commenced in the Superior Court Department on January 26, 1984.

The case was heard by *Andrew G. Meyer,* J., on a motion to dismiss.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*David L. McLellan (Gerald M. Cohen* with him) for the plaintiff.

*Elaine M. Moriarty* for the defendant.

O'CONNOR, J. In this case, we hold that a man's promise to support a woman made in consideration of the woman's abandonment of her marriage, or promise to abandon her marriage, to another man violates public policy and is unenforceable.

The complaint is in five counts. Count I alleges that on an unknown date in September, 1970, "the parties entered into an oral agreement whereby the Defendant agreed to support and care for the Plaintiff and her children for the remainder of her life," and "[i]n consideration of . . . the Defendant's promise . . . Plaintiff, on her part, agreed to and did in fact give up her marriage, her marital rights, and refrained from

naming Defendant and protected Defendant in her pending divorce action." Count II alleges that "[o]n or about September, 1970, the parties commenced a life style whereby the Defendant, pursuant to his promise to the Plaintiff to support her for the remainder of her life, supported the Plaintiff and her children [for a substantial period of time and then ceased doing so], and the Plaintiff, at the instance and request of Defendant, and in reliance upon Defendant's promise and the Plaintiff's expectations that Defendant would care and support the Plaintiff for the remainder of her life, gave up her marriage, to care for Defendant." Count II further alleges that "[b]y reason of the breach by the Defendant of his promises made to Plaintiff on or about September, 1970, and divers other occasions, the Plaintiff has sustained serious and substantial damages." In Count III, the plaintiff says that "on or about September, 1970, and on divers other occasions thereafter, the Defendant promised that he would care and support the Plaintiff for the remainder of her life. In consideration of the foregoing, the Plaintiff relinquished all her marital rights, provided companionship to the Defendant, altered her mode of living and in all respects acted as a loyal and dutiful friend and companion." Counts I and II are for breach of contract. Count III seeks recovery on a quantum meruit theory. Counts IV and V, respectively, allege the torts of intentional infliction of emotional distress and negligence based on the defendant's breach of "the agreement" to which the earlier counts refer.

The complaint asserts the plaintiff's right to damages based on the defendant's failure to fulfil his promise of support, made in September, 1970, and "on divers other occasions." We read every count in the complaint as asserting that an integral part of the consideration for the undertaking was the plaintiff's promise, thereafter fulfilled, that she would abandon her existing marriage to another man.[1]

The defendant moved to dismiss the complaint under Mass. R. Civ. P. 12 (b) (6), 365 Mass. 754 (1974), and a judge of

---

[1] In her brief, the plaintiff's arguments are premised on the construction we give to the complaint.

the Superior Court allowed the motion. The plaintiff appealed to the Appeals Court and, on our own motion, we transferred the appeal to this court. We conclude that the judge correctly allowed the defendant's motion. Nevertheless, we vacate the judgment of dismissal in order that the plaintiff may have an opportunity to move in the Superior Court for leave to amend her complaint.

We apply the principle that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [her] claim which would entitle [her] to relief." *Nader* v. *Citron,* 372 Mass. 96, 98 (1977), quoting *Conley* v. *Gibson,* 355 U.S. 41, 45-46 (1957). Nevertheless, we conclude that the complaint was properly dismissed. We declare, as an expression of public policy, that a contract, containing as an essential provision the requirement that one of the contracting parties will abandon that party's marriage to a third person, is unenforceable in this Commonwealth on a contract, quantum meruit, or any other theory. Because, as we construe it, the plaintiff's undertaking to abandon her marriage is an integral part of the contract on which she relies, "it appears beyond doubt that the plaintiff can prove no set of facts in support of [her] claim which [will] entitle [her] to relief." *Nader* v. *Citron, supra* at 98.[2]

Our declaration of policy is consistent with other expressions of this court and the Legislature. The Legislature has declared that "the policy of this commonwealth [is] to direct its efforts . . . to the strengthening and encouragement of family life." G. L. c. 119, § 1 (1984 ed.). This court has said that "[marriage] is the foundation of the family. It is a social institution of the highest importance. The Commonwealth has a deep interest that its integrity is not jeopardized." *French* v. *McAnarney,* 290 Mass. 544, 546 (1935). See *Commonwealth* v. *Stowell,* 389 Mass. 171, 175 (1983) ("The Commonwealth has extensively exercised [its] power to regulate numerous aspects of

---

[2] It is unnecessary, therefore, for us to consider other arguments of the defendant challenging the enforceability of the alleged contract.

the marriage relationship. See generally G. L. c. 207. Given this broad concern with the institution of marriage, the State has a legitimate interest in prohibiting conduct which may threaten that institution"); *Osborne* v. *Osborne,* 384 Mass. 591, 599 (1981) ("[W]e recognize that certain contracts may so unreasonably encourage divorce as to be unenforceable on grounds of public policy. See Restatement [Second] of Contracts § 190 [1981]"); *Green* v. *Richmond,* 369 Mass. 47, 51 (1975) ("Massachusetts has a strong public interest in ensuring that its rules governing marriage are not subverted").

The plaintiff's reliance on our decision in *Green* v. *Richmond, supra,* as support for the proposition that her complaint is adequate to survive a motion to dismiss is misplaced. We need not discuss that case except to point out that the female plaintiff, who sought to recover on the basis of an agreement, performed by her, that she would live with the defendant's decedent and render services to him in return for his promise to compensate her by will, did not rely, as does the plaintiff here, on an agreement containing as an essential provision the requirement that she abandon her marriage. To the contrary, the evidence in that case showed that the plaintiff had been divorced before she met the defendant's decedent. *Id.* at 49.

We conclude that the trial judge properly dismissed the plaintiff's complaint. We recognize that the plaintiff has not requested leave to amend her complaint in the event of our affirming the trial judge's order, and we also recognize that nothing in the complaint suggests that the plaintiff's abandonment of her marriage was not a significant part of the consideration for the defendant's alleged promise. However, in view of the strong policy of our rules of civil procedure in favor of allowing the amendment of pleadings, we vacate the judgment of dismissal. The plaintiff is to have thirty days from the receipt in the Superior Court of the rescript herein to move in that court for leave to file an amended complaint. Accordingly, the case is remanded to the Superior Court for further proceedings.

*So ordered.*

ABRAMS, J. (concurring with the result). I concur with the result. I write separately to emphasize that the complaint should not have been dismissed. The Superior Court judge should have allowed the plaintiff to amend her complaint to remedy any defects he perceived therein, or directed the parties to submit affidavits so that the validity of the plaintiff's claims could be tested on a motion for summary judgment.

The plaintiff's complaint, liberally construed, states a claim. A complaint need not set forth facts with great specificity. See Mass. R. Civ. P. 8 (a), 365 Mass. 749 (1974). "The rules of pleading in Massachusetts are generous." *Spence* v. *Boston Edison Co.,* 390 Mass. 604, 615 (1983). "'[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' Furthermore, the allegations of the complaint, as well as such inferences as may be drawn therefrom in the plaintiff's favor, are to be taken as true." *Nader* v. *Citron,* 372 Mass. 96, 98 (1977), quoting *Conley* v. *Gibson,* 355 U.S. 41, 45-46 (1957).

The judge erred by reading the complaint so narrowly that he failed to see that, on the pleaded facts and the inferences fairly drawn, the plaintiff stated an enforceable contract claim. In Count II the plaintiff seeks recovery on an implied contract theory for services rendered to the defendant in exchange for promises of support given on "divers other occasions." The phrase "divers other occasions" may refer to occasions other than the initial exchange of promises before the plaintiff's divorce. The plaintiff may be able to prove that these occasions were subsequent to her divorce and were independent of any pre-divorce promises she had made. Thus, regardless of the enforceability of any agreements made before the divorce, the complaint may state an express or implied contractual claim for services given in exchange for promises made after the divorce.

Similarly, Count III may state an enforceable claim in quantum meruit. In exchange for the later (i.e., post-divorce) promises of support, the plaintiff gave the defendant "personal love, emotional and spiritual support and care for a family environ-

ment" and "provided companionship . . . [and] acted as a loyal and dutiful friend and companion." These services of love, support and companionship are indistinguishable from the services provided by the plaintiff in *Green* v. *Richmond,* 369 Mass. 47 (1975). In that case, the court affirmed a quantum meruit recovery for services provided under an unenforceable contract to make a will and held that it was up to the jury to determine whether consideration that amounted to illegal conduct was essential or incidental to the performance of the contract. *Id.* at 51-52. In *Rizzo* v. *Cunningham,* 303 Mass. 16 (1939), the court affirmed a quantum meruit recovery for a plaintiff who had provided companionship and friendship to the defendants' testatrix.[1] Under *Green* and *Rizzo,* the unamended complaint here is sufficient to survive a motion to dismiss. On remand, however, the plaintiff should amend Counts II and III to state more clearly these theories of recovery. Assuming that she does proceed with a claim under *Green,* she may be entitled to a jury determination of whether any consideration that amounted to illegal conduct was essential or incidental to the performance of the contract.

Thus, on its face, the plaintiff's complaint states at least two claims apart from those based on promises to forgo her marital rights. Even if the judge did not recognize those claims, he should have considered whether "the plaintiff may be entitled to any form of relief, even though the particular relief [she] has demanded and the theory on which [she] seems to rely may not be appropriate." *Nader* v. *Citron, supra* at 104. Or, if it was not clear whether the plaintiff could state claims based on promises exchanged by the parties after the plaintiff's divorce, the judge should have allowed the plaintiff leave to amend the complaint to state such claims more explicitly. Even if the judge had properly concluded that the complaint should be dismissed, he should have done so with leave to amend.

---

[1] In a similar case decided the same year as *Rizzo,* the court apparently found it of no particular significance that the defendants' testator was a married man at the time he entered into a contract to support the plaintiff in return for her care, nursing, attention and companionship. *Taub* v. *United States Trust Co.,* 303 Mass. 339 (1939).

See *Foman* v. *Davis,* 371 U.S. 178, 182 (1962); *Auster Oil & Gas, Inc.* v. *Stream,* 764 F.2d 381, 386 (5th Cir. 1985); *Triplett* v. *LeFlore City,* 712 F.2d 444, 446 (10th Cir. 1983); 5 C.A. Wright & A.R. Miller, Federal Practice and Procedure § 1357, at 611-612 (1969) (following dismissal under rule 12 (b)(6), "the court normally will give plaintiff leave to file an amended complaint").

In general, such a generous approach to the plaintiff's complaint is required by rule 12 (b)(6) and the case law under it. That approach is especially appropriate in this case for several reasons. First, as noted above, the complaint stated at least two obvious theories of relief. The plaintiff may be able to state other grounds, and will have the opportunity to do so on remand. Second, before today, this court has never considered and ruled on the enforceability of a contract in which the consideration is the abandonment of marriage or marital rights. The decisions of this court which bear on elements of that question have been mixed. For example, as the court observes, we often have spoken of the importance of the social institution of marriage. Yet, in some circumstances, this court has subordinated marital harmony to other social values. See, e.g., *Three Juveniles* v. *Commonwealth,* 390 Mass. 357, 361 (1983) ("There is, however, no privilege for a spouse not to testify against the other spouse in a civil action, even if that testimony may be highly destructive of the marital relationship"); *Lewis* v. *Lewis,* 370 Mass. 619 (1976) (abolishing interspousal immunity in tort). In one case involving an attorney's contingent fee arrangement in a divorce action, we stated that "the court takes an especially dim view of any penalty clause that discourages reconciliation, as such a provision is manifestly contrary to public policy." *Osborne* v. *Osborne,* 384 Mass. 591, 606 n.12 (1981). Later, in *Guenard* v. *Burke,* 387 Mass. 802 (1982), we permitted a quantum meruit recovery for an attorney who had performed services in a divorce action under an unenforceable contingent fee agreement. An important factor in that decision was the absence of anything "in the record to show that either party to the divorce action had the slightest interest in reconciliation. Thus, on the facts, the purpose of

[the rule forbidding contingent fee arrangements in divorce actions] to eliminate any inducement to counsel to proceed with the divorce rather than to seek reconciliation was not thwarted." *Id.* at 807. Where the decisions of this court yield such conflicting guidance to the trial court, the trial court may not with any certainty conclude that the plaintiff cannot state a claim. In such circumstances, the judge should deny the motion to dismiss and allow the litigation to proceed so that the controversy may be decided on the merits either by summary judgment or at trial.

A third and related reason why this complaint should not have been dismissed is that it is based on a legal theory that, although novel to this Commonwealth, enjoys reasonable support elsewhere. The plaintiff argued that even where the general rule is that a contract in which the consideration is the abandonment of marriage or marital rights is unenforceable, there is an exception where the marriage is not a stable, fruitful, and productive union at the time the contract is formed. In support of her argument, she cited the Restatement (Second) of Contracts § 190(2) comment c (1981), and two California cases, *Glickman* v. *Collins,* 13 Cal. 3d 852 (1975), and *Spellens* v. *Spellens,* 49 Cal. 2d 210 (1957). The question whether such an exception ought to be recognized in this Commonwealth remains open after today's decision. See *Guenard v. Burke, supra.*

Where, as here, a plaintiff presents novel legal claims that have been recognized by other eminent courts and legal authorities, the better practice is for the trial court to deny a motion to dismiss under rule 12 (b)(6) and instead permit the parties to develop the facts so that the novel theory may be "explored and assayed in the light of actual facts rather than a pleader's suppositions." 5 C.A. Wright & A.R. Miller, Federal Practice and Procedure § 1357, at 603 & n.81 (1969), citing *Shull* v. *Pilot Life Ins. Co.,* 313 F.2d 445, 447 (5th Cir. 1963). See *M. Aschheim Co.* v. *Turkanis,* 17 Mass. App. Ct. 968 (1983); *Jenkins* v. *Jenkins,* 15 Mass. App. Ct. 934 (1983). See also *George* v. *Jordan Marsh Co.,* 359 Mass. 244, 249 (1971). After completion of discovery, the issue will be whether

a trial or a motion for summary judgment under rule 56 is the appropriate procedure for obtaining a decision on the legal issues raised by the new theory.