McCann, John S., J.
INTRODUCTION
The plaintiff, Kenneth Hannam (“Hannam”), brings this action against the defendants, the Worcester County Sheriffs office (“WC Sheriffs office”) and the Sheriff Guy Glodis (“Glodis”) for breach of contract and age discrimination stemming from his termination from the Sheriffs office. The Sheriffs office and Glodis now move pursuant to Mass.R.Civ.P. 12(b)(6) seeking dismissal of Counts I and II of Hannam’s complaint comprising the breach of contract claims. For the following reasons, the defendants’ motion to dismiss is ALLOWED.
BACKGROUND
The parties are in complete agreement as to the underlying pertinent facts of this case.
Hannam was originally hired by the then Sheriff John Flynn (“Flynn”), of the WC Sheriffs Office on April 10, 1989. Up and until November 3, 2004, he served as Deputy Sheriff in the Civil Process Division of the WC Sheriffs office. On November 3,2004, Glodis was elected as the new Sheriff of Worcester County, and assumed the post in January of2005. On the very same day as the election, Hannam, through Flynn, entered into an Employment Agreement with the WC Sheriffs office.[1]
The Employment Agreement is effective for two years, terminating on October 31, 2006. The provisions of the Employment Agreement are as follows: Hannam was promoted to Sergeant from Deputy Sheriff effective November 1, 2004, and his annual compensation increased to $52,832 plus health, dental, retirement, group benefits, vacation and sick leave. More pertinent to the motion before the court, the Employment Agreement specifies that Hannam can only be terminated and removed as Deputy Sheriff for “cause shown.”[2]
In Februaiy of 2005, Hannam was demoted from the rank of Deputy Sheriff/Sergeant, without cause, and his salary was reduced to $45,552 annually. On June 17, 2005, Hannam was notified in writing that he was being terminated from the WC Sheriffs office effective June 18, 2005. The WC Sheriffs office contends that the termination was part of an overall reorganization by the new Sheriffs Administration, headed by Glodis.
DISCUSSION
I. Standard of Review
When evaluating the sufficiency of a complaint under Rule 12(b)(6), the court must determine whether the complaint states a claim upon which relief may be granted. The court must accept as true the factual allegations of the complaint, as well as any reasonable inference which can be drawn therefrom in the plaintiffs favor. Eyal v. Helen Broadcasting Corp., 411 Mass. 426, 429 (1991). “The complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [her] claim which would entitle [her] to relief.” Nader v. Citron, 372 Mass. 96, 98 (1977), quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957). “[A] complaint is sufficient against a motion to dismiss if it appears that the plaintiff may be entitled to any form of relief, even though . . . the theory on which [she] seems to rely may not be appropriate.” Nader, 372 Mass. at 104.
II Analysis
Count I-Breach of Contract Claim Against the WC Sheriffs Office
Statutorily, a Deputy Sheriff must be appointed by a Sheriff. G.L.c. 37, §3 (“A sheriff may appoint deputies, who shall be sworn before performing any official act”); Middlesex County v. Int’l Bhd. of Corn Officers, 62 Mass.App.Ct. 830, 831 (2005) (“The sheriff had the exclusive authority to appoint deputy sheriffs”). The Supreme Judicial Court has clarified that a power of appointment also carries with it the attendant power of removal. Adie v. Mayor of Holyoke, 303 Mass. 295, 300 (1939) (“It is a well-nigh universal rule that where no definite term of office is fixed by law the power to remove an incumbent is incident to the power to appoint, in the absence of some constitutional or statutory provision to the contrary”).
In this light, the WC Sheriffs office contends that Hannam served at the pleasure of the Sheriff, and was *478 therefore, subject to removal at the discretion of the newly elected Sheriff, Glodis. In conjunction with this authority, the WC Sheriffs office argues that no Employment Agreement, particularly one initiated by an outgoing sheriff, can vitiate or diminish the statutorily proscribed authority of a newly elected sheriff to appoint or remove deputies. See Opinion of the Justices to the Governor & Council, 275 Mass. 575, 579 (1931) (“It is the general mle of the common law apart from statute that a public officer cannot give an appointee a tenure of office beyond his own”). Consequently, the WC Sheriffs office seeks a finding that the Employment Agreement is unenforceable and, commensurate with that finding, a dismissal of Count I of Hannam’s complaint for failure to state a claim.
Hannam does not dispute that a deputy sheriff serves at the appointment of the sheriff statutorily. And normally, this concession and the analysis above would end our foray into this matter. However, Hannam’s argument in opposition presents the court with a case of first impression. Essentially, he contends that the Massachusetts Legislature’s abolishment of the Worcester County government on July 1, 1998 converted his position of Deputy Sheriff in the Civil Processing Division of the WC Sheriffs office from a state employee to a direct employee of the Sheriff. As his compensation comprises revenues generated from the Civil Processing office and not from state appropriations, he argues that he is not beholden to the Commonwealth. Consequently, he concludes that he is freely entitled to enter into a separate and binding Employment Agreement with the WC Sheriffs office given his status.
The extrapolation of his contention is as follows: The Massachusetts Legislature’s abolition of the Worcester County Government on July 1, 1998 established the WC Sheriffs office as an independent state agency. Pursuant to G.L.c. 34B, §4, the Sheriff became an employee of the Commonwealth, subject to election, and assumed control over all of the administrative and operational responsibilities of the WC Sheriffs office, including the Civil Processing Office. Consequently, the employees of the Civil Processing Office were no longer employees of the County, a political subdivision of the Commonwealth,[3] but worked under the direct operational control of the sheriff.
In accordance with G.L.c. 37, §11, Hannam, as deputy sheriff, collected fees for the serving of civil process. The WC Sheriffs office organized the Civil Processing Office to operate as a self-sustaining adjunct of itself by utilizing the collected fees to pay for costs and expenses.[4] Only two employees out of 27 in the Civil Processing Office are compensated out of state appropriations. The remainder, including Hannam, were paid out of the revenues generated from the civil processing fees. These 25 employees also maintain their own benefit plans, separate and distinct from the Commonwealth.
In addition, Section 639 of Chapter 26 of the Acts of 2003 required all sheriffs and deputy sheriffs to transmit 50% of the fees collected for civil process “in excess of the fee structure” authorized by G.L.c. 262, §8,[5] to the Commonwealth’s general fund effective February 1, 2004. Hannam points out that as of June 9, 2005, the State’s Auditing Report indicates that the fees collected by the Civil Processing Office were not deposited in the general fund or recorded on the state’s management and accounting system. Hannam also references a May 2006 News Bulletin produced by the WC Sheriffs office that identifies itself as “Paid for by the Worcester County Civil Process Office at No Cost to the Tax Payers.”
Thus, because Hannam is not paid out of state appropriations, but rather the revenue generated by the WC Sheriffs office through the civil processing fees, and because he is a direct employee of the sheriff, he contends that he was entitled to enter into the Employment Agreement with the WC Sheriffs office as negotiated by Sheriff Flynn. Hannam also cites various examples of other “quasi-independent state agencies” in the Commonwealth, including the Mass Port Authority and the State Treasurer’s Office, entering into confidentiality and severance agreements with their employees, as evidence of his Employment Agreement’s binding effect.
Hannam’s contention, however, is in direct contravention to G.L.c. 34B, §14(a). The statute reads in relevant part:
[T]he sheriff, all deputies, jailers, superintendents, keepers, officers, assistants and other employees of sheriff of an abolished county, employed immediately before the transfer date . . . shall be transferred to the commonwealth with no impairment of employment rights held immediately before the transfer date . . . Nothing in this section shall be construed to confer upon any employee any right not held immediately before the date of said transfer, or to prohibit any reduction of salary grade, transfer, reassignment, suspension, discharge layoff or abolition of position not prohibited before such date. [Emphasis added.)
The statute’s clear language ciystalizes the fact that Hannam, a deputy sheriff employed in the WC Sheriffs office as of 1989, was made an employee of the Commonwealth on July 1, 1998, the date the Worcester County government was abolished. No statutory distinction is made as to his source of income affecting his status as an employee of the Commonwealth, nor is there an exclusion that can be implied or discerned from the statute from his employment with the Civil Processing Office of the WC Sheriffs office. Since Hannam’s contentions were contingent upon his status as a non-employee of the Commonwealth, G.L.c. 34B, § 14(a) eliminates the contingency. Consequently, absent evidence to contradict the “plain and ambiguous” language of the statute, Hannam’s Employment *479 Agreement is unenforceable as a matter of law. Comm’r of Revenue v. Cargill Inc., 429 Mass. 79, 82 (1999), quoting White v. Boston, 428 Mass. 250, 253 (1998) (“[w]e are constrained to follow the plain language of a statute when its language is plain and unambiguous and its application would not . . . contravene the Legislature’s clear intent”).
Moreover, Hannam concedes that the Civil Processing Office, through the WC Sheriffs office, was considered to be a political subdivision of the Commonwealth prior to the County government’s abolishment. Prior to July 1, 1998, Hannam, as a County employee, did not possess a right to enter into a separate and binding agreement with the WC Sheriffs office. As G.L.c. 34B, § 14(a) dictates, no right that was not conferred prior to the transfer date can be conferred after the transfer date. Consequently, Hannam’s contention has no merit.
In light of the foregoing, Count I of Hannam’s complaint must be dismissed.
Count II-Breach of Contract Claim against Glodis
Due to the court’s finding that the Employment Agreement is unenforceable as a matter of law, Count II of Hannam’s complaint seeking a breach of contract claim against Glodis on the Employment Agreement must similarly be dismissed.
Even if the court had concluded that the contract was enforceable, Count II of the complaint would be dismissed because Glodis is not a party to the Employment Agreement. See Pembroke Country Club, Inc. v. Regency Savings Bank, 62 Mass.App.Ct. 34, 37 (2004). The Employment Agreement clearly designates that the contract is between Hannam and the WC Sheriffs office, not the Sheriff individually or principally. Glodis did not negotiate, sign or affirm the Employment Agreement in question. Even if we construed Glodis, as Sheriff, as agentto the WC Sheriffs Office for purposes of the Employment Agreement, such a designation cannot revive Hannam’s claim. The law is quite clear that absent specific exceptions, not alleged or found here, an agent is not personally liable for the contract of a principal. See Spaneas v. Travelers Indem Co., 432 Mass. 352, 354 (1996); Porshin v. Snider, 349 Mass. 653, 655 (1965); Williams v. Vanaria, 2000 Mass.App.Div. 162, 164 (2000).

ORDER

For the foregoing reasons, the WC Sheriffs office motion to dismiss pursuant to Mass.R.Civ.P. 12(b)(6) as to Count I of the plaintiffs complaint is ALLOWED, and Glodis’ motion to dismiss pursuant to Mass.R.Civ.P. 12(b)(6) as to Count II of the plaintiffs complaint is ALLOWED.

The Employment Agreement’s first paragraph states that it is between “the Sheriffs office of Worcester County and Kenneth Hannam.”

The “causes” outlined in the Employment Agreement are “[i]ncompetence, inability to perform the essential functions of the positions of Deputy Sheriff, with or without reasonable accommodation as defined by the Americans with Disabilities Act; conviction of, or written admission to, a felony or other crime involving moral turpitude, conviction of a crime constituting a felony; any act involving theft, embezzlement or fraud; or material violation of any of the policies of the Office of Deputy Sheriff.”

The Internal Revenue Service and the State Auditor prior to the reorganization classified the Civil Processing Office as such.

A State Audit Report of June 9, 2005 determined that the Civil Processing Division was “organized to function as an adjunct to the Office of the Sheriff of Worcester County.” Yet, the same report also states, “The Office of the Sheriff of Worcester County, operating as a division of the Sheriff of Worcester County, a political subdivision of the Commonwealth of Massachusetts government system . . .”

The statute sets forth specific amounts that the deputy sheriff and sheriff are required to charge for various civil process functions, including but not limited to attachment, replevin, delivery of summons, trustee process.