AMERICAN VELODUR METAL, INC. *vs.* NORMA SCHINABECK.

Plymouth. May 6, 1985. — July 29, 1985.

Present: GRANT, CUTTER, & PERRETTA, JJ.

*Practice, Civil,* Discovery, Sanctions. *Evidence,* Expert opinion, Hearsay, Business records. *Abuse of Process. Damages,* Counsel fees, Abuse of process.

In an action by a corporation controlled by the husband of the defendant, seeking to enjoin the defendant wife from occupying a former marital residence to which the corporation claimed exclusive possession under a conveyance initiated by the husband, it could reasonably be concluded that the husband's prolonged course of obstructive tactics in making himself unavailable for deposition clearly demonstrated his wilfulness and bad faith, and a judge acted properly within his discretion in ordering that the wife's counterclaims against the corporation, alleging fraudulent conveyance of the residence and abuse of process, "[be] deemed admitted." [465-467]

As part of the proof on the issue of damages at the trial of a counterclaim for abuse of process, a judge, in the circumstances, acted properly within his discretion in admitting in evidence a computer printout of billing records found by him to have been made in good faith and in the regular course of a law firm's practice of law, even though the material had been prepared, at least in part, after the filing of the complaint and thus did not strictly fulfil the requirement of G. L. c. 233, § 78. [467-469]

A wife's counterclaim against a corporation controlled by her husband adequately alleged that the corporation had abused legal process by commencing an action against her for the ulterior purpose of coercing a settlement in a divorce proceeding. [469-470]

At the trial of a claim for abuse of process, there was sufficient evidence of damages resulting from mental suffering, harassment, inconvenience, counsel fees, and loss of time to warrant the judge's denial, in his discretion, of motions for judgment n.o.v. and for a new trial, based on the contention that the damages were excessive. [470-471]

CIVIL ACTION commenced in the Superior Court Department on July 15, 1982.

A pretrial motion was heard by *Herbert F. Travers, Jr.*, J., and the case was tried before *Chris Byron*, J.

*Brian E. Concannon (Daniel E. Kudzma* with him) for the plaintiff.

*Danielle E. deBenedictis (James B. Conroy* with her) for the defendant.

CUTTER, J. In 1981, the defendant, also plaintiff-in-counterclaim (the wife), and Rainer Schinabeck had been married for some years. The wife sought a divorce from Schinabeck in Switzerland, where the couple owned a house. In 1982, Schinabeck sold the Swiss house, and the wife and the couple's two children were evicted (in a manner at least inconsiderate). The wife and the children later returned to Scituate, Massachusetts, to a house there[1] which in past years had been owned by Schinabeck and the wife as tenants by the entirety. She filed a complaint for divorce in the Probate Court, Plymouth County, on July 23, 1982.

Schinabeck was president of American Velodur Metal, Inc. (AVM), a family business. For a time prior to 1981, part of the Scituate premises was used as an office for AVM.[2] On November 3, 1981, Schinabeck purported to revoke the trust, (see note 1, *supra*), with the consequence, at least by the terms of the trust, that he would have gained title to the Scituate premises. On August 30, 1982, Schinabeck purported to con-

---

[1] The Scituate premises consisted of seven acres of land with a main house, a multiple vehicle garage, a pool, two small cottages, and a separate small house. The premises had been acquired in 1968 and used as the marital home. The Schinabeck family traveled back and forth between the Scituate house and the Swiss house. In June, 1977, at Schinabeck's request, the premises had been conveyed by him and the wife to themselves as trustees of a trust (the N & R Realty Trust) for the benefit of the wife and the couple's two children, revocable by Schinabeck alone (defined in the trust as the "settlor" although both he and his wife were trustees and both had owned the premises by the entirety) on a basis, potentially deceptive, by which he alone, on revocation, would become the owner of the premises.

[2] In January, 1981, Schinabeck as trustee purported to lease the Scituate premises to AVM, then represented by Schinabeck as its president. That lease by its terms expired December 31, 1981, and the record does not disclose that it was renewed, although the lease purported to permit annual renewals at the option of AVM.

vey the Scituate premises to AVM for $150,000. In part at least because of the town zoning board's denial of a variance, AVM's business was moved elsewhere.

On July 15, 1982, AVM filed a complaint in the Superior Court claiming the right to exclusive possession of the Scituate premises under the lease and seeking to enjoin the wife from using the Scituate premises. A hearing on a restraining order was set for July 22, 1982. Before that hearing the wife and AVM entered into a stipulation, which essentially separated the Scituate premises into two parts, so that (for the time being at least) the wife would have control of the main house and pool and certain access routes, and AVM would have control of the balance of the premises.

AVM's complaint was amended on September 30, 1983, and the wife's answer to that complaint and her amended counterclaim were filed on November 4, 1983. The complaint set out the substance of the transactions affecting the Scituate premises already mentioned (see note 1, *supra*) and sought to enjoin the wife from using all or most of the premises. The wife's answer admitted the existence of the various documents already mentioned but disputed their validity. The answer and her counterclaim alleged (a) the existence of the Swiss and Plymouth County divorce proceedings; (b) that the present complaint had been brought by AVM to coerce the wife to "settle the divorce action [a separate lawsuit] on terms . . . favorable to" Schinabeck (as an improper use of court process); (c) that the wife had "suffered emotional, physical, and financial damage"; (d) that the transactions relating to the Scituate premises were carried out (with AVM's actual or constructive knowledge) to hinder the wife in recovering her fair share of property in the divorce proceedings; and (e) that the transactions were fraudulent under G. L. c. 109A. The counterclaim also asserted that, at all relevant times, AVM was wholly owned by Schinabeck, that he has been its president, a director, and stockholder, and that he is the beneficial owner of its stock.

The wife, with her original answer to the unamended complaint, gave notice of intention to take Schinabeck's deposition on October 5, 1982. His counsel notified the wife's counsel

on that morning that Schinabeck would not be available for a deposition. As a consequence of a hearing before a Superior Court judge (Judge A), no action was taken then upon the wife's motion to compel discovery and for sanctions for Schinabeck's failure to appear. Notice, however, was given by the wife's counsel of intention to take the depositions of various officers and employees of AVM in an attempt to establish the then existing relationship between Schinabeck and AVM.

As a consequence of three such depositions (which gave strong indication that Schinabeck was still the controlling force behind AVM), the wife renewed on November 22, 1982, her attempt to obtain an order compelling AVM to produce Schinabeck for a deposition and for sanctions in the event that he should not appear. An order was issued, after hearing on December 17, 1982, before another Superior Court judge (Judge B), for a writ of protection against service of process on Schinabeck in the divorce proceeding while in Massachusetts to give depositions.[3] In the writ of protection it was stated that Schinabeck's deposition was to take place on or before February 7, 1983.

On April 20, 1983, a further motion by the wife for sanctions for AVM's failure to produce Schinabeck for a deposition (as required by Judge B's order of December 17, 1982) was allowed by Judge B "unless . . . Schinabeck is made available for a deposition within 60 days." The motion had requested that "the allegations of . . . [the wife's] first and second counterclaim . . . [be] deemed admitted."

On June 7, 1983, the wife gave notice of a deposition of Schinabeck to be taken in Boston on June 14, 1983. A motion by AVM to extend the time for producing Schinabeck for a

---

[3] On December 23, 1982, three or more actions were commenced by AVM in a District Court in some degree duplicating the present complaint. These were consolidated with the present complaint in the Superior Court, and AVM's motion to dismiss its own present complaint in the Superior Court was denied on February 4, 1983. From that motion it reasonably could be inferred that AVM was attempting to avoid the effect of the outstanding orders and stipulations in this case in the Superior Court.

deposition was denied on June 10, 1983, by another Superior Court judge (Judge C). On June 16, 1983, the writ of protection was extended by order of Judge C, to midnight on June 20, 1983, on motion of AVM.[4]

Judge C on June 30, 1983, after hearing, denied a motion filed on June 23, 1983 (three days after the expiration of the time specified in Judge B's order of April 20, 1983). The motion was to extend the time for compliance and to transfer the deposition to Zug, Switzerland, to be held on July 11, 1983, upon payment by Schinabeck of the travel expenses to Zug of one attorney and a stenographer. Judge C then also ordered that the "first and second counterclaims [be] deemed admitted," pursuant to Judge B's order of April 20, 1983,[5] and that the case be placed on the jury trial list for October, 1983. The order of June 30, 1983, was based expressly on findings (among others) by Judge C that the new motion for a continuance was filed after the time limit set in the order of April 20 had expired; that no affidavit supported the new motion; and that no satisfactory proof whatsoever underlay the assertions of Schinabeck's counsel concerning the reasons for Schinabeck's failure to appear for a deposition.[6]

---

[4] An affidavit of associate counsel for the wife (dated June 23, 1983) asserted that the wife's attorney had been informed by counsel for AVM that Schinabeck might appear for a deposition in Boston on June 20, 1983, but that at 9:50 A.M. on that day the wife's attorney had been notified that Schinabeck "had decided not to appear." In fact he did not appear.

[5] A petition for relief under G. L. c. 231, § 118, from Judge B's order of April 20, 1983, was filed by AVM. This was denied by a single justice of this court. A somewhat similar petition was filed under § 118, from the order of June 30, 1983, entered by Judge C. A single justice of this court also denied that petition, on August 15, 1983. Petitions in this court under § 118 (Nos. 1983-0115 CV, 0215 CV, and 0384 CV), filed in the divorce proceeding, need not be discussed.

[6] Affidavits of the wife and her daughter filed August 3, 1983, indicate that, in addition to Schinabeck's persistent course of refusal to appear for depositions, AVM's employees have pursued a policy of harassment of the wife and children in the Scituate house. The wife's affidavit asserts that Schinabeck, although possessed of "vast assets, including . . . ten corporations, a private jet, many [expensive] automobiles . . . and apartments in Switzerland, London, Washington, D.C., Munich, and Florida," has failed to pay alimony and child support ordered by the Probate Court.

The case, essentially limited to a hearing on damages on the first counterclaim, alleging abuse of process,[7] was tried before another Superior Court judge (Judge D) and a jury from January 4 to 17, 1984. Judge D denied motions by AVM for a directed verdict and (after the jury had returned a verdict for Mrs. Schinabeck of $285,000) for judgment n.o.v., and for a new trial. Judgment was entered on the verdict thus returned. We consider the plaintiff's appeals on the issues (1) whether the sanctions imposed upon it were too harsh, and, in addition to the evidence matter discussed below in part 2 of this opinion, (2) whether the damages awarded upon the wife's counterclaim for abuse of process were excessive.

1. Schinabeck's course of obstructive tactics was appropriately described by Judge C (at the hearing on June 10, 1983) as a "continuing pattern of making himself unavailable for . . . deposition and . . . a conscious design on his part to avoid doing so."[8] Judge B apparently had perceived this pattern when he entered his order of April 20, 1983, giving Schinabeck sixty days in which to appear for a deposition. No affidavit had or has been filed in behalf of AVM which contradicts the affidavits and contentions of the wife and others, or that tends to negate the depositions of AVM's employees (in part called to the attention of Judge B) indicating that Schinabeck still controlled AVM. Writs of protection had been issued to prevent Schinabeck from being served with process in the Plymouth

---

[7] Judge D dismissed AVM's complaint and directed that the Scituate premises be treated as having been the subject of a fraudulent conveyance (G. L. c. 109A, § 10). Judge D's original intention apparently was that the Scituate premises be reconveyed by AVM to Schinabeck and the wife as tenants by the entirety. In any event, an injunction was entered on January 26, 1984, restraining AVM from transferring or encumbering any of its assets until the wife obtained full satisfaction of any judgment in this case, or until any such judgment should be set aside on appeal.

[8] This language and the whole tone of the hearing before Judge C on June 29, 1983, do not suggest to us that Judge C thought he had no power to revise Judge B's order of April 20, 1983, but rather that he, as matter of discretion, agreed with it. Any contention to the contrary, based on cases like *I.S.K. Con of New England, Inc.* v. *Boston*, 19 Mass. App. Ct. 327, 329-330 (1985), does not appear to have been raised in the Superior Court or until a supplemental brief filed in this court two days after the arguments.

County divorce action if he had come to, or been present in, Massachusetts for a deposition. No affidavit established that he was unable to attend a deposition by reason of illness or other reasons than his business travels and his own recalcitrance. Judge B gave AVM (which, on the basis of the depositions of AVM's employees, he was justified in treating as Schinabeck's controlled entity) a long enough period to produce Schinabeck. Judge C was well justified, on this record, in enforcing Judge B's perceptive order when the sixty-day period for producing Schinabeck had expired. Schinabeck's own flagrantly egregious conduct called for a serious sanction.[9]

We recognize fully that Mass.R.Civ.P. 37(b), 365 Mass. 798 (1974), and the authorities following it, and the comparable Federal rule, require that the failure to provide discovery must take place "wilfully" and that any sanction for violation of the rule be "just." See *Insurance Corp. of Ireland, Ltd.* v. *Compagnie des Bauxites de Guinee*, 456 U.S. 694, 707-708 (1982); *Partlow* v. *Hertz Corp.*, 370 Mass. 787, 790-791 (1976); *Litton Business Tel. Syss.* v. *Schwartz*, 13 Mass. App. Ct. 113, 116-118 (1982). See also *Levings* v. *Forbes & Wallace, Inc.*, 8 Mass. App. Ct. 498, 505 (1979); *M. Clifton Edson & Son* v. *McConnell*, 9 Mass. App. Ct. 930 (1980). Contrast *Henshaw* v. *Travelers Ins. Co.*, 377 Mass. 910, 911 (1979, where a sanction of default in the particular circumstances was deemed too severe and lesser sanctions were imposed); *Bcb Berman Associates* v. *Gross*, 15 Mass. App. Ct. 1000, 1001 (1983, where the record showed "some tardiness" but also "indications of 'extensive efforts at compliance' "). Compare also *Arnesen* v. *Shawmut County Bank*, 504 F.Supp. 1077, 1079-1080 (1980, a case under the somewhat comparable provisions of Fed.R.Civ.P. 41 [b]).

In the present case, Schinabeck's testimony was vital to the wife's ability to establish her defenses to AVM's claims and

---

[9] Especially was this so in view of Schinabeck's efforts (in a form running serious risk of deception and naturally arousing suspicion, see note 1, *supra*) to have AVM gain possession of, and title to, his principal Massachusetts assets disclosed by this record, viz., the Scituate premises and the personal property there to be found.

to prove her counterclaims. From the depositions of AVM's employees already mentioned, it could be inferred by Judges B and C that Schinabeck, through his controlled entity, AVM, had been responsible for the initiation of the complaint against her. His testimony also was important in the proof of (1) a fraudulent intention in the transfers leading to placing record title to the Scituate premises in AVM, and (2) a malign purpose to use the prosecution of this complaint to exert pressure on the wife to accede to an unfair settlement of the separate divorce proceedings. Without his testimony she inevitably would suffer great prejudice. We think the harsh sanction of default on the counterclaims was justified abundantly. Judges B and C reasonably could conclude that Schinabeck's wilfulness and bad faith had been demonstrated clearly. There was no abuse of discretion by either judge.

2. At the trial before Judge D, proof was appropriate of the expenses for legal fees and disbursements caused to the wife by Schinabeck's complaint. Counsel for the wife was a partner in a substantial Boston law firm. To prove the expense caused to the wife, counsel called as a witness a senior partner of that firm (who was supervising work on this litigation) to testify to the work done by partners, associates, and paralegal employees of the firm. His testimony as an expert of the fair value of the work done in connection with defending against AVM's complaint, of course, was necessarily based in part upon the records of the firm.[10] Counsel also offered in evidence computer printouts of matters reflected in (and provided from) daily diary entries of the persons who had done the work.

The wife's counsel produced the billing records for review by AVM's counsel in advance of any offer of them in evidence. The basic diary sheets were also available for examination, and an effort (dealt with by Judge D in bench or lobby confer-

---

[10] His testimony, as an expert, was that the legal services in defending against AVM's complaint were reasonably worth $75,000 and, based upon time charges alone, had a value of more than $50,000 with, in addition to each value, disbursements agreed to be $4,500. See as to the permissible introduction of the basis for an expert's opinion, *Simon* v. *Solomon*, 385 Mass. 91, 105-106 (1982).

ences) was made to segregate from all the time expended by the law firm on a variety of matters for the wife (e.g., the divorce proceeding, the counterclaims, and the three District Court cases consolidated with this case, note 3, *supra*) the time spent only in the defense of AVM's complaint. Judge D had ruled that only the fees and disbursements with respect to the wife's defense of AVM's complaint were admissible to prove damages recoverable in this action. After a comprehensive review of the billing records and a voir dire examination of the witness (the supervising partner), the billing records were received as an exhibit.[11]

Judge D obviously recognized, as we do, that there was not strict compliance with G. L. c. 233, § 78, in that the records, in part at least, were prepared after this complaint was filed. See *DiMarzo* v. *American Mut. Ins. Co.*, 389 Mass. 85, 105-106 (1983). No reason, however, was advanced for doubting the reliability of the records as representing the time reported by a significant number of persons as spent on the wife's defense of this case. Where, as here, the records had been found to have been made in good faith, in the regular course of the practice of law, and could have been found to be reliable, the evidence would have been admitted under Proposed Mass.R.Evid. 803(6), and under the precisely comparable Fed.R.Evid. 803(6). The Supreme Judicial Court, in refusing in 1982 to adopt the then proposed rules, encouraged the bar to cite those rules where pertinent. That court in *Commonwealth*

---

[11] Judge D made express findings that the law firm's "records were made in good faith, in the regular course of business," but were not "made before the beginning of this . . . proceeding." He further found that if there had "been a separate suit [for abuse of process] rather than a counterclaim . . . those records would [and could] have been made before that second . . . proceeding" and would have been admissible. He then ruled that the wife ought not "to be penalized . . . [in] submitting that evidence [the records] merely because she brought a counterclaim rather than waiting to file a separate suit," where the regular course of business of the law firm was to make computer entries from the daily diary of each person who performed services at the time (or shortly after) such services were performed. We recognize that each such person could have been summoned to testify about the records submitted by them, respectively, but this would have been a wasteful, time-consuming process.

v. *Meech*, 380 Mass. 490, 496-497 (1980), made note that it did "not regard the common law hearsay exceptions as frozen in their established contours," and that the court had "been prepared on suitable occasions to venture forth." See *Commonwealth* v. *White*, 370 Mass. 703, 713 (1976, where it was said that "the hearsay rule and its stated exceptions should not be regarded as a closed system without room for variations in particular cases on reasoned grounds"); Liacos, Massachusetts Evidence, 266, 328-338 (5th ed. 1981 & Supp. 1985). See also *Dyecraftsmen, Inc.* v. *Feinberg*, 359 Mass. 485, 487 (1971, transcription of records present in the courtroom admitted in the discretion of the judge as matter of convenience); *Commonwealth* v. *Hogan*, 7 Mass. App. Ct. 236, 251-252; *S.C.* 379 Mass. 190 (1979, printout of computer records stored before but written out after the beginning of the litigation). Contrast *Wingate* v. *Emery Air Freight Corp.*, 385 Mass. 402, 405-408 (1982, employer's report of an injury not a business record of workers' compensation insurer, but see concurring opinion at 409-410). As to recovery of counsel fees in appropriate instances, compare *Chartrand* v. *Riley*, 354 Mass. 242, 244 (1968), and *M.F. Roach Co.* v. *Provincetown*, 355 Mass. 731, 732-733 (1969).

We conclude, giving consideration to all the circumstances, that Judge D reasonably admitted the computer records relating to the time expended. We perceive no respect in which the admission of the records was unfairly prejudicial in any practical sense. Judge D's patient efforts to ensure the reliability and appropriate content of the records, and his ruling finally admitting them, represented a sound, practical administration of this trial.

3. AVM contends that Judge D should not have denied its motion for a directed verdict, made at the close of the wife's evidence on her counterclaim, because the wife had not made out a case of abuse of process. We recognize that, even after a default, a court may consider whether a legitimate cause of action has been alleged and admitted. *Productora e Importadora de Papel, S.A. de C.V.* v. *Fleming*, 376 Mass. 826, 833-835 (1978). The wife, however, in her counterclaim adequately

alleged that "(1) 'process' was used [by AVM]; (2) for an ulterior . . . purpose [to influence the divorce settlement by coercion]; (3) resulting in damage." *Jones* v. *Brockton Pub. Mkts., Inc.*, 369 Mass. 387, 389 (1975). See *Malone* v. *Belcher*, 216 Mass. 209, 211-213 (1913); Prosser & Keeton, Torts § 121 (5th ed. 1984). The evidence presented supported the allegations. There was ample evidence of damage. The motion could not have been granted. *Alholm* v. *Wareham*, 371 Mass. 621, 627 (1976). Compare, as to the presence of an ulterior purpose in bringing the action, *Cohen* v. *Hurley, ante* 439, 442-443 (1985).

There also was no error in Judge D's denial of AVM's motions for a new trial and for judgment n.o.v. So far as those motions were based on the contention that the damages assessed by the jury were excessive, there was sufficient evidence that damages had been caused to the wife in the form of (a) mental suffering and distress, harassment by AVM, and much inconvenience, all recoverable, if caused by the alleged abuse of process; (b) the necessity of incurring counsel fees to defend against the claim (see note 10, *supra*); and (c) at least the expenditure of the wife's time in many consultations with counsel about the defense.

This is not a case of recovery for the tort of intentional infliction of emotional distress as in *Agis* v. *Howard Johnson Co.*, 371 Mass. 140 (1976), or of negligent causing of such distress. See *Payton* v. *Abbott Labs*, 386 Mass. 540 (1982). Recovery has been allowed in Massachusetts for wrongful use of process including "injury to . . . the feelings of the injured person." *Titcomb* v. *Bay State Grocery Co.*, 254 Mass. 599, 601 (1926). See *Malone* v. *Belcher*, 216 Mass. at 211-212. There seems to us to be a clear distinction between (a) mental and emotional distress caused by the commission of an independent and separate tort recognized at common law, and (b) distress constituting the separate tort recognized fairly recently in the *Agis* case, 371 Mass. at 142-146, and the tort discussed in the *Payton* case, 386 Mass. at 548-557. See the thorough opinion in *George* v. *Jordan Marsh Co.*, 359 Mass. 244, 249-256 (1971). We are not prepared to say that Judge D

abused his discretion by denying a new trial or, in the alternative, refusing to order a remittitur in this matter involving unliquidated damages. See *Freeman* v. *Wood*, 379 Mass. 777, 781 n.9 (1980).[12]

4. The judgment appealed from, with respect to damages upon the wife's counterclaim for abuse of process, is affirmed. The present record does not clearly indicate (see note 7, *supra*) whether further action (including the entry of judgment) is appropriate upon the wife's claim, deemed admitted, for the alleged fraudulent conveyance of the Scituate premises. With respect to that counterclaim, the case is remanded to the Superior Court for any further proceedings which may be appropriate.

*So ordered.*

---

[12]There is no merit to a contention by AVM that the verdict should be set aside because the wife's trial counsel kept a large number of files containing basic documents in this case at or near her place in the courtroom without offering them in evidence. This matter was noted (during a bench conference) by Judge D with disapproval because of its possible effect on the jury as to the amount of material involved in the case. AVM, however, made no objection to the presence of the material. No request for instructions concerning this pile of documents was made by AVM. Any unfortunate effect of the presence of the documents was neutralized adequately by the judge's instructions that the jury's verdict must be based upon the facts proved in testimony and by exhibits.