Larkin, J.
This case was heard in the Pittsfield District Court and involved an action of contract on two promissory notes. The defendants filed counterclaims alleging malicious abuse of process and violation of Chapter 93A of the General Laws (the Consumer Protection Act). The trial judge entered judgment for the plaintiff-appellant on the notes and found for the defendants-appellees on their counterclaims. Plaintiff-appellant (First Agricultural Bank) appealed the judgment on the counterclaims. The facts as found by the trial judge and set out in the report are essentially as follows:
*111 The defendant Cappuccino of the Berkshires, Inc. (hereinafter “Cappuccino”) is a Massachusetts corporation engaged in the restaurant business in Pittsfield. The defendant Shahram Mashhoud (hereinafter “Shahram”) is the treasurer, principal officer and sole shareholder of Cappuccino. The defendanl Maria Mashhoud (hereinafter“Maria”), the wife of Shahram,has nointerest ir Cappuccino whatever.
On July 6, 1982, Cappuccino borrowed $68,194 from the plaintiff, First AgriculturalBank(hereinafter “Bank”),¡evidenced by a promissory note signed by Shahram as Treasurer of the corporation. At the same time, he signed a continuing guaranty of the debt to the bank in his individual capacity. On September 8, 1981, Shahram forged Maria’s name without her knowledge, authorization or consent to a similar form of personal continuing guaranty of Cappuccino’s debts to the Bank, present and future. Thomas F. Plunkett, a Vice President of the Bank, signed the guaranty as a “witness” to the purported signature of Maria. Shahram signed his wife’s name to the guaranty in Plunkett’s office at the Bank and at his request. In this regard, Plunkett “witnessed” a forged signature knowing that Maria had no knowledge of the guaranty and had not authorized Shahram to pledge her credit for the debts of Cappuccino.
Maria operates a beauty shop as a sole proprietor for her own account and independently of her husband. On May 28,1982, Maria borrowed $20,00.0 from the Bank, evidenced by a promissory note for use in her beauty shop business. Shahram signed the note as a co-maker, although he had no interest in the ownership, management or control of the business.
Cappuccino and the Mashhouds did not make timely payments of'the monthly installments on either note. In September 1983, the Bank brought suit against the defendants in the Berkshire Superior Court. The litigation involved the application of the proceeds of certain fire insurance policies to the Cappuccino note. On November 10,1983, it moved to attach certain assets of the defendants in trustee process, supported by an affidavit, under oath by Plunkett as Vice President, that the “allegations of the complaint are true of my personal knowledge.” Since the complaint alleged, among other things, that Maria had signed a guaranty of Cappuccino’s debts, the affidavit was knowingly false.
The Bank and the defendants settled the Berkshire Superior Court litigation by an agreement dated November 10, 1983. However, again the defendants failed to make timely payments on the two notes and by July 1984, both notes were in default. The Bank brought suit on the instant action on or about October 3,1984 and service was effected upon all three defendants on October 8,1984. In this action, again, the October 13,1984 complaint alleged that Maria had signed a personal guaranty on the July 6, 1982 note.
As of the date of the trial, the Cappuccino note had been paid in full. The note signed by the individual defendants had a balance due of $9,829.70. Judgment for the Bank was entered in that amount.
On the issue of the defendants counterclaims, the trial judge found that Maria had sustained severe emotional distress because of the “willful, intentional, unfair and deceptive acts of the Bank” in its collection action on the July 1982 note. Relative to this point there was evidence that Maria had, by an undated letter, complained to the Bank that she had been “falsely alleged” to have been a“co-signer of a note for Cappuccino, Inc.,” and, further asserted that she “did not sign such documents for any organization and how (could) an officer of your Bank witness such signature (sic).” She further stated in the letter that the Bank’s pursuit of her under the forged guaranty was causing her *112 to “suffer morally, socially, physically/and economically.” The Bank made no reply to the letter.
After the filing of suit and in the course of taking a deposition of Shahram, counsel for the Bank discovered, for the first time, that Shahram had signed Maria’s name to the guaranty of the Cappuccino note. Counsel, on behalf of the Bank, promptly filed a Motion to Dismiss that portion of the complaint, which motion was allowed.
Notwithstanding this action, on the totalityof the evidence before him., the trial judge entered judgment against the Bank, finding, in effect, that it had committed a willful, intentional, unfair and deceptive act in violation of Chapter 93A and that the filing of the suit against Maria constituted a malicious abuse of process. The trial judge found that Maria had sustained damages of $7,500 and, in accordance with the statute, damages were trebled because of the willful and intentional conduct of the Bank. The trial judge also made an award of attorneys’ fees to Maria.
On the further issue of fees for the Bank’s attorneys, in collecting the balances due on the two notes, the trial judge found that neither the corporate nor the individual defendants were responsible for the Bank’s attorneys’ fees because of its intentional, willful, unfair and deceptive acts.[2]
Here on appeal, the Bank claims to be aggrieved by the trial court’s findings in its initial Memorandum of Decision dated May 8, 1985. It specifically challenges those rulings dealing with denial of the Bank’s attorneys’ fees and the fundamental finding of the willful and intentional unfair acts of the Bank relative to Maria’s putative damages. The Bank also challenges the trial judge’s ruling that the conduct of the Bank towards Maria constituted a malicious abuse of process.
On a case of this nature it is well to reiterate the institutional limitations of the Appellate Division in reviewing a decision of the trial court. Appellate review in law cases is ordinarily limited to questions of law. Bartley v. Phillips, 317 Mass. 35,42 (1944); Massachusetts General Hospital v. City of Quincy, 348 Mass. 767, 791 (1965) (rescript opinion); Scire v. Scire, 348 Mass. 767, 768 (1964) (rescript opinion); Adamaitis v. Metropolitan Life Ins. Co., 295 Mass. 215, 221 (1936); Bresnick v. Heath, 292 Mass. 293, 296 (1935); Himelfarb v Novadel Agene Corp, 305 Mass. 446, 449 (1940). There can be no such review ol a question of fact or discretion. Id. “It is well established that the judge’s findings are conclusive if there was any evidence to- support them.” Scire, 348 Mass., at 768. See generally, Nolan, 9A M.P.S. §966, at 259-62 (1975).
In the case at bar, the trial judge made detailed findings which are set out in the Report.[3] It was the trial judge who was in the best position to weigh the evidence based on the appearance and credibility of witnesses and to make findings based on that evidence, as well as any exhibits. If an aggrieved party wishes to raise a question of law as to whether the findings of the judge are warranted by the evidence, the party must file requests for rulings and ask a report to that end. Massachusetts General Hospital v. City of Quincy, 348 Mass. at 791; Reid v. Doherty, 273 Mass. 388 (1930).
In the Report, the Bank claims to be generally aggrieved by the trial court’s findings at it relates to Chapter 93A of the General Laws and the finding by the *113 trial judge that the Bank’s conduct towards Maria constituted a malicious abuse of process. Where a report seeks to attack a general finding for a party to an action, the question is not one of law and is not reviewable by the Appellate Division. Chadwick v. Desroches, 333 Mass. 768, 769 (1956) (rescript opinion). See Muir Brothers Co. v. Sawyer Construction Co., 328 Mass. 413, 414-415 (1952). In the light of this precedent, we decline to undertake a review of the judge’s findings but will delimit ourselves to a review of the precisely delineated legal issues raised by the Bank. These issues are as follows:
1.) Whether Maria failed to state with precision the relevant facts to support her legal theory under chapter 93A;
2.) Whether the trial court erred by ruling that Maria sustained severe emotional distress because of the Bank’s actions;
3.) Whether the Bank committed a willful, intentional, unfair or deceptive act in violation of Chapter 93A of the General Laws in its proceedings as against Maria.
4.) Whether the trial court erred by ruling that neither the corporate nor the individual defendants are responsible for the Bank’s attorneys’ fees.
I. Precision or Completeness of Complaint:
In general, it can be stated that in this era of “notice pleading” there is no requirement that a party in his pleadings state what ultimately turns out to be the correct legal theory applicable to the case, Gallant v. City of Worcester, 383 Mass. 707, 709 (1981), or set forth all of the relevant facts with capacious completeness or meticulous precision. Haggerty v. Globe Newspaper Co., 419 N.E. 2d 844, 845 (1981). See Nader v. Citron, 372 Mass. 96, 104-5 (1977); Ahern v. Warner, 16 Mass. App. Ct. 223, 226 (1983). This is especially true in cases brought under Chapter 93A; “what is an unfair act may be difficult to determine on the basis of the complaint done.” Nader v. Citron, 372 Mass., at 105. ‘The existence of unfair acts and practices must be determined from the circumstances of each case,” Commonwealth v. DeCotis, 366 Mass., 234, 242 (1974). ‘The particular factual nuances of each case may require elaboration through discovery and development at trial.” Nader v. Citron, 372 Mass., at 105.
In the case at bar, Maria’s counterclaim under 93A was clearly sufficient to warrant the trial judge’s finding in her favor on that count. In her Third Counterclaim, Maria stated in paragraph 24: “Defendants say that the plaintiff maintains its action with no basis therefore.” In paragraph 25, she states: “Defendants say that the plaintiff has knowledge that it has no basis to maintain its action.” Certainly, these allegations, though surely terse and ■ cryptic, are broad enough to embrace “notice” requirements that the Bank had filed a false affidavit in prior litigation or procured a forged guaranty. Though, perhaps, purposefully broad in cast and content, we cannot say that they are so abysmally deficient in “notice” signals, to render the complaint fatally defective.
II. Finding of Severe Emotional Distress:
The trial judge found that the Bank’s conduct did, in fact, have a measureable effect on Maria’s feelings and emotions and caused her severe emotional distress. This he found in the context of the Bank’s conduct which amounted to a malicious abuse of process.[4] The tort of malicious abuse of process consists in the use of lawful process primarily for a purpose for which *114 it is not designed. Gabriel v. Borowy, 324 Mass. 231, 236 (1949). See generally, Nolan, 37 M.P.S. § 56, at 74 (1979). A plaintiff must allege facts which are sufficient to support the propositions that: “(1) ‘process’ was used; (2) for an ulterior or illegitimate purpose; (3) resulting in- damage.” Jones v. Brockton Public Markets, Inc., 369 Mass. 387, 389 (1975). See American Velodur Metal, Inc. v. Shinabeck, 20 Mass. App. Ct. 460, 470 (1985). Carroll v. Gillespie, 14 Mass. App. Ct. 12, 26 (1982); Maline v. Belcher, 216 Mass. 209, 212 (1913); Prosser & Keeton, Torts, § 121 (5th Ed. 1984).
There was evidence to support the allegations in the case at bar. And in this regard, we believe that the trial judge was fully warranted in findings as he did on this issue.[5] For as noted above, the judge is in the best position to weigh the evidence especially in cases of this character. Scire, 348 Mass., at 768.
It should be clearly noted that this is not a case of recovery for the tort of intentional infliction of emotion distress as in Agis v. Howard Johnson Co., 371 Mass. 140 (1976), or of negligent causing of such distress as was the situation in Cimino v. Milford Keg, Inc., 385 Mass. 323 (1982). The plaintiff need not prove any manifestation of physical injury accompanying the emotional distress. “Recovery has been allowed in Massachusetts for wrongful use of process including “injury to the feelings of the injured person.’ ” American Velodur Metal v. Shinabeck, 20 Mass. App. Ct., at 470 (quoting Titcomb v. Bay State Grocery Co., 254 Mass. 599, 601 (1926). There is a recognized distinction between “(a) mental and emotional distress caused by the commission of an independent and separate tort recognized at common law, and(b) distress constituting the separate tort recognized fairly recently in the Agis case.” American Velodur Metal v. Shinabeck, 20 Mass. App. Ct., at 470.
In addition to the emotional distress, Maria also incurred legal fees to defend against the Bank’s malicious abuse of process. These legal fees are part of her damages and are compensable. American Velodur Metal, Inc. v. Shinabeck, 20 Mass. App. Ct., at 469-70.
Our review of the record satisfies us that there is nothing to suggest that the trial judge was clearly wrong in awarding the damages for emotional distress and legal fees. To the contrary, as we already have indicated, these damages are fully supported by the evidence.
III. Proceedings Against Maria Amounted to a Violation of Chapter 93A:
In order to recover under Chapter 93A, the injured party must prove some quantum of harm. Under this statute a party is able to recover “all losses which were the foreseeable consequences of the defendant’s unfair or deceptive act or practice.” DiMarzo v. American Mutual Liability Insurance Co., 389 Mass. 85,101 (1983). As adumbrated in Leardi v. Brown, 394 Mass. 151 (1985), the party need only suffer some injury of the kind contemplated by the statute, or the “invasion of any legally protected interest of another,” [ quoting from restatement second of torts, § 7, comment a(1965)],including emotional distress to satisfy the statute. On this record, the injuries suffered by Maria, as a result of the Bank’s conduct, assuredly supply the requisite quantum of harm.
Section 9 of Chatper 93A of the General Laws provides that a civil action may be brought by “(a)ny person . . . who has been injured by another person’s use or employment of any method, act or practice declared to be *115 1 unlawful by Section 2. ..Section 2 provides: “Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful.” The Bank contends that the mere initiation of legal proceedings, in and of itself, does not constitute “an act in the conduct of any trade or commerce” sufficient to invoke the strictures of the statute. We disagree.
Taken alone, it appears that there is support for a trial judge’s finding that the “mere” commencement of litigation may constitute a violation of 93A if such activity is ultimately found to be unfair. Blanchette v. Cataldo, 734, F.2d 869 (1st Cir. 1984) (applying Massachusetts law). However, it is clear that in this case the trial judge did not rely solely on the commencement of litigation in finding the Chapter 93A violations against the Bank. Rather the trialjudge expressly predicated the violations of Chapter 93A upon the Bank’s filing a false affidavit, procuring a forged guaranty and in filing a suit based on a spurious note.[6] Taken together, there is no question that there is abundant evidence to support the trial judge’s determination that a violation in the conduct of trade or commerce exists in this case relative to the claims of Maria. Further, there is nothing to suggest that the trialjudge was clearly wrong in awarding treble damages because the acts were found to be willful and intentional.[7]
IV. Bank’s Attorneys ’ Fees:
Chapter 93A is equitable in nature and on its surface would appear to grant a trialjudge broad discretion in formulating appropriate awards. In finding that the Bank was not entitled to collect attorneys’ fees generated incident to the collection of the notes, the trialjudge ruled that it would be “inequitable” to award fees in these circumstances.[8] It is obvious that the trial court was concerned with rewarding the Bank for its wrongful conduct. As he emphasized in his July 24, 1985 “Memorandum of Decision and Order of Judgment,” the conduct of the Bank “has tainted the entire collection process.” Id., at 4.
However much we may emphathize with the trial court’s approach to this question on this record, it is clear that claims brought in a District Court under Chapter 93A are delimited to recovery of money damages only. G.L.c. 93A, § 9 (3A) (West 1984). See Nolan, 35 M.P.S. § 124, at 281 (1979). No rights to equitable relief — enforceable in the District Courts — were created when the Legislature amended the Consumer Protection Act in 1978 extending jurisdiction to the District Courts to entertain claims under the Act. Id. Claims seeking equitable relief must be brought in the Superior Court. Nolan, supra, at 281.
Here, when the trialjudge denied the'Bank its attorneys’ fees, incident to the collection of the note of Shahram, he was obviously invoking equitable considerations presently beyond the jurisdiction of the District Courts.[9] For these reasons, such a ruling cannot stand. Shahram had contracted to be *116 liable to the Bank for costs of collection, including reasonable attorneys’ fees, in the event of default in the payment of the notes. The payment of these fees are validly compensable.[10]
For all of the above reasons, we affirm the trialjudge’s rulings in all respects excepting the denial of the Bank’s attorneys’ fees. The case is to be remanded for reconsideration of the Bank’s claim for attorneys’ fees incurred in the collection of the note to Shahram and, otherwise, affirmed in all particulars.

As the trial judge noted in his Memorandum of Decision dated May 8,1985: “to permit recovery would reward the Bank for its wrongful conduct in procuring the falseguaranty. An award of counsel fees would be proper but inequitable as to the July note in these circumstances. The litigation surrounding both notes is so intertwined that it is not possible to separate out counsel's time and effort and the Bank’s conduct has tainted the entire collection process.” (Id., at 9)

See Report Exhibit “D”, Memorandum of Decision dated May 8,1985.

The trial judge noted: “It would be difficult to conceive a stronger case of malicious conduct than the use of the judicial system to enforce a guaranty known to be fictitious, and the filing of two affidavits attesting to its authenticity as part of the pleadings ” Memorandum of Decision dated May 8, 1985, at p. 10.

,The Hank wrongfully sued Maria twice, forcing her to retain counsel to defend the actions. As an incident to these actions, it attempted to attach her home. There was evidence presented that Maria had suffered morally, socially, physically and economically, feeling she might “lose everything.” The public notoriety attendant on the institution of litigation caused her severe emotional distress, for which she is entitled to compensation.

The Bank admits in its Brief at p. 6 that the Bank’s procuring of a forged guaranty would have been sufficient to establish a claim under 93A.

See footnote .*3, supra.

See footnate 1, supra.

When the trialjudge made his initial order denying the Banks attorneys’ fees for t he act ion against Shahram, he ruled that the action surrounding both notes was so intertwined as to taint the entire collection process. His exact language is set out in footnote 1 Counsel for both the Mashhouds and the Bank were given an opportunity to reargue the attorneys’ fees issues following the May 8, 1985 Memorandum issued by the trialjudge. At that point the trialjudge agreed that counsel lor t he Bank had succeeded in separating the time and effort on one note from the other, despite his earlier opinion that it was impossible to do so. “Memorandum of Decision and Order of Judgment," .July 24. 1985 at p.3. Despite this, the trialjudge still declined to award the Bank its attorneys’ foes rendoi ed in the collection of the note to Shahram.

The trial j udge's ruling that Maria could collect her attorneys’ fees on her 93A claim was obviously proper. G.L. c. 93A, § 9 (3A) lists the damages available in District Court actions as “double or treble damages” and “attorneys’ fees and costs.”