Gants, J.
In July 1997, the plaintiffs, Cheryl and Robert Varney (“the Varneys”), purchased a home in *309 Topsfield from Janice Scibelli. Before closing on the purchase of their home, the Varneys retained Black Paw Home Inspection, Inc. (“Black Paw”) to perform a home inspection. The Varneys allege that, after they purchased this home, they discovered that there was soot and smoke damage throughout the house that had been covered up through the use of chemicals containing carcinogens. The Varneys subsequently filed suit in July 1998 against Scibelli, Black Paw, and Scibelli’s real estate brokerMiddleton Real Estate Co., Inc.to recover the damages resulting from their purchase of an allegedly damaged and contaminated home (“Varney I"). The defendant Matthew Simpson (“Simpson”), the President of Black Paw, was not originally named as a defendant in Varney I. On August 4, 1999, the Varneys moved to amend their complaint in Varney I to add Simpson as a defendant, and to add claims against him alleging fraud and breach of contract. On September 8, 1999, Judge Nancy Merrick denied the motion to amend on two grounds: (1) the untimeliness of the motion; and (2) that “allowance of this motion is futile since amended complaint fails to state a claim.”
Unable as a result of Judge Merrick’s Order to add Simpson as a defendant in Varney I, the Varneys filed a second complaint with Simpson as the lone defendant ("Varney II”), alleging fraud and breach of contract as they had in Varney I and adding a third claim of violation of G.L.c. 93A. The defendant Simpson now moves for summary judgment as to the three claims in Varney II. For the reasons stated below, Simpson’s motion for summary judgment is ALLOWED as to the fraud and breach of contract claims and DENIED as to the G.L.c. 93A claim.

DISCUSSION

The gist of the allegations in Varney II is that Simpson advertised Black Paw to be a “fully insured” home inspection company. However, when the Varneys brought claims against Black Paw in Varney I, Simpson refused to submit the claim to Black Paw’s insurer or to give the insurer notice of the existence of these claims. As a result, Black Paw’s insurer disclaimed coverage because of Black Paw’s alleged failure to comply with its Insuring Agreement, which required timely notice of such claims. The Varneys claim that Black Paw, without such insurance coverage, will be unable to pay the anticipated judgment from Varney I because Black Paw is “a vastly under-capitalized entity” and seeks damages from Simpson equal to the uncollectible amount.
The facts regarding insurance coverage are not greatly in dispute. Simpson admits that Black Paw advertised in several newspapers in i 997 that it was “fully insured.” He also admits that “Black Paw did not submit the claims made in Varney I to its insurance company because [he] made the determination that it was a frivolous and meritless claim that did not require an insurance claim.” He also admits that, as a result of his failure to report this claim, insurance is not available in this case. The only fact materially in dispute is whether Black Paw is “a vastly undercapitalized entity,” as the Varneys contend, or “a fully capitalized, profitable business,” as Simpson contends, but, as shown below, the resolution of this fact is not necessary to the disposition of this motion or even this case.
The Varneys, although they disagree with Judge Merrick’s ruling in Varney I that their fraud and breach of contract allegations fail to state a claim, wisely recognize that the doctrine of claim preclusion forecloses reconsideration of her ruling and do not press these claims in the face of this motion for summary judgment. This Court, consequently, allows Simpson’s motion for summary judgment as to the fraud and breach of contract claims in Varney II. It should be emphasized that the sole ground for allowing the motion as to these counts is claim preclusion: a plaintiff whose motion to amend a complaint has been denied because the new claims fail to state a claim may not simply file a new complaint with these claims and seek an independent determination from another judge on the same issue. See, e.g., Heacock v. Heacock, 402 Mass. 21, 23 (1988).
The Varneys, however, did not seek to add a Chapter 93A claim in their motion to amend in Varney I, and therefore Judge Merrick’s ruling does not preclude this claim from going forward in a new complaint. With regard to the Chapter 93A claim, the issue is whether it may constitute an unfair or deceptive act or practice in the conduct of trade or commerce, in violation of G.L.c. 93A, §2(a), for the president of a home inspection company to advertise that his company is fully insured and then, when a claim is brought against the home inspection company alleging negligence, to intentionally decide not to submit the claim to the insurer, resulting in the denial of any insurance coverage on that claim. This Court concludes that these facts may indeed support such a claim under G.L.c. 9 3 A.
This is a case of first impression in that no case has been cited by any party (and none found by the Court) that addresses whether the failure to file an insurance claim, under some circumstances, may itself constitute an unfair act or practice in violation of Chapter 93A. As a result, this Court must look to the meaning and purpose of Chapter 93A to determine whether this conduct falls within its rubric. The Supreme Judicial Court has stated “that the following are ‘considerations to be used in determining whether a practice is to be deemed unfair: (1) whether the practice ... is within at least the penumbra of some common-law, statutory, or other established concept of unfairness; (2) . . . is immoral, unethical, oppressive, or unscrupulous; (3) . . . causes substantial injury [to]. . . competitors or other businessmen.’ ” Datacomm Interface, Inc. v. *310 Computerworld, Inc., 396 Mass. 760, 778 (1986) quoting PMP Assocs., Inc. v. Globe Newspaper Co., 366 Mass. 593, 596 (1975), quoting 29 Fed. Reg. 8325, 8355 (1964). An act or practice that is deceptive or fraudulent is certainly in violation of c. 93A, but an act or practice need not be deceptive or fraudulent to be found to be “unfair.” See Massachusetts Farm Bureau Federation, Inc. v. Blue Cross of Massachusetts, Inc., 403 Mass. 722, 729 (1989).
When a home inspection company advertises that it is “fully insured,” it reasonably conveys two messages to potential customers: (1) that it is reputable enough to obtain insurance; and, more importantly, (2) that if the customer were to bring any claim of' negligence against the home inspection service, there will be a “deep pocket”an insurance companyto ensure full payment of any judgment or settlement. Implicit in the second message is that the home inspection company will extend the benefits of its insurance coverage to its customers by reporting negligence claims to its insurer and complying with all other conditions necessary to ensure coverage. By choosing not to submit a negligence claim to its insurer, the home inspection company is effectively negating the second message because there will be no insurance (and consequently no “deep pocket”) in the absence of timely submission. It does a customer no good for his home inspection company to have insurance if that insurance will not be available to that customer. In other words, while the home inspection company’s advertisement represents that it is fully insured, it effectively negates or diminishes that representation when it acts to deny a customer the benefits of that full insurance coverage. “Fragmentary information may be as misleading ... as active misrepresentation, and half-truths may be as actionable as whole lies . . .” Kannavos v. Annino, 356 Mass. 42, 48 (1969) quoting Harper & Jones, Torts, §7.14. Therefore, this Court concludes that it may be deceptive and certainly would be unfair for a home inspection company who advertises that it is fully insured to knowingly engage in conduct that would prevent a customer’s claim from being insured.[1]
Having declared that a Chapter 93A claim is cognizable on the facts set forth in this record, it is important to set forth the limits of such a claim. Damages from this alleged Chapter 93A violation arise only in the event that the Varneys prevail in Varney I against Black Paw and Black Paw is unable to pay its judgment in full. In that event, compensatory damages under Chapter 93A against Simpson would equal the difference between the amount of the judgment against Black Paw and the amount collected from Black Paw. Since the disposition of the Chapter 93A claim against Simpson in Varney II must await the disposition of the claims against Black Paw in Varney I and the claims in these two cases are inherently interwoven, this Court hereby consolidates these two actions.

ORDER

For the reasons stated above, this Court ORDERS that:
The defendant’s motion for summary judgment is ALLOWED as to the fraud and breach of contract claims and DENIED as to the G.L.c. 93A claim.
Varney I (Essex County Superior Court Civil Action No. 98-1337) and Varney II (the above-entitled action) are hereby consolidated.

 Since Simpson has attested that he knowingly chose not to submit the Varneys’ claim to Black Paw’s insurer, this Court need not consider whether a negligent failure to act would constitute a violation of Chapter 93A.
Nor need this Court determine whether the Varneys relied on Black Paw’s representation that it was “fully insured.” Actual reliance is not a required element of a Chapter 93A claim. International Fidelity Insurance Co. v. Wilson, 387 Mass. 841, 850 (1983).
Nor can Simpson contend that only Black Paw may be liable under Chapter 93A for his decision not to submit the insurance claim, since he made this decision in his capacity as Black Paw’s President. The doctrine of respondeat superior that a corporation is liable for the negligence of its officers and employees does not mean that a corporate officer is free from personal liability for misconduct done within the scope of his employment. Rather, a corporate employee remains personally liable for torts and Chapter 93A violations that he personally committed, regardless of whether or not that tort or violation is committed within or outside the scope of his employment. Nader v. Citron, 372 Mass. 96, 102-03 (1977) (defendant “is not immunized as an officer and director of a corporation for the acts he is alleged to have committed personally").