Fabricant, J.
INTRODUCTION
This action arises from ahorne inspection performed by the defendant Jerry DiMuro on behalf of his employer, Black Paw Home Inspection, Inc., of a home the plaintiff, Judith James, later purchased. James alleges that DiMuro failed to identify and to inform her of rotted sills, and that he erroneousfy rated the sills as “acceptable.” She seeks to recover the costs of repair, as well as lost rental income and other damages. Presently before the Court is the defendants’ motion for summary judgment. For the reasons that will be explained, the motion will be allowed in part and denied in part.
BACKGROUND
The evidence offered in connection with this motion, considered in the light most favorable to the plaintiff, provides the following factual background. In the fall of 2002, the plaintiff looked for a house to purchase. In October, she saw the one-hundred-year-old two-family house that is the subject of this action, located at 3 Morton Place in East Boston. She made a second visit with her brother and sister-in-law, who had experience in home ownership, followed by a brief third visit. During these visits, the plaintiff did not see any sign of structural damage, or any problem with the sills. She made an offer on the house, which led to an agreement to purchase at a price of $255,000.
The plaintiff then engaged the defendant Black Paw Home Inspection, Inc., to inspect the property for a fee of $295. Black Paw sent the defendant Jerry DiMuro to perform the inspection on November 14, 2002. The plaintiff and DiMuro signed Black Paw’s standard form contract, after the plaintiff had read the form, and then proceeded with the inspection. The realtor and one of the sellers were present.
The standard form contract sets forth a series of recitations, including the following: the inspection “is a visual examination of the property”; Black Paw gives “no opinion as to any latent or concealed defects”; “Any signs of insects, bats, mice or rodents, active or inactive, should be checked by a licensed treatment company before purchase”; the inspection is “non-invasive”; ratings “represent the condition of inspection items in readily accessible areas at the time of the inspection only”; “Any items hidden behind walls, ceilings, drop ceilings, insulation and stored items are considered non-accessible”; “Any item not receiving the highest rating is subject to updates and repairs before purchase by the buyers or the sellers”; “Any area rated non-accessible should be evaluated by an independent contractor before you complete your purchase”; and “This inspection report is not intended to be used as a guarantee or warranty, expressed or implied, with regard to the adequacy, performance or condition of any inspected structure, item or system. Black Paw Home Inspection and its agents are not acting as insurers of any inspected conditions or components on this report.” The agreement goes on to provide that “(i]n the event you believe that a component has been misrepresented or omitted, Black Paw "reserves the right to investigate and evaluate the situation before repairs are initiated," and further that it “RESERVES THE RIGHT TO REMEDY ANY CLAIM BY REPAIRING OR REPLACING THE CONDITION, AT ITS OWN ELECTION. IN NO EVENT SHALL BLACK PAW HOME INSPECTION BE LIABLE TO THE CLIENT FOR ANY SPECIAL CONSEQUENTIAL, INDIRECT OR INCIDENTAL DAMAGES, HOWEVER CAUSED, ON ANY THEORY OF LIABILITY, ARISING IN ANY WAY OUT OF THIS AGREEMENT OR THE SERVICES PROVIDED BY BLACK PAW HOME INSPECTION.” The recitations conclude: “Before you consider purchasing this property you need to have all items rated Junctional unsatisfactory, non-accessible or contractor advisedjurther evaluated by a licensed contractor.” (Emphasis in original.)
The plaintiff, according to her deposition testimony, explained to DiMuro that she was a first-time home buyer, that she “didn’t know a lot about homes” and “was really counting on his expertise,” and that she “couldn’t afford to buy a home that required extensive repairs.” DiMuro explained the scope of his inspection, including that it was visual only. The plaintiff and DiMuro then proceeded through the house. While in the basement, DeMuro pointed out the need to replace temporary support columns, as well as evidence of infestation of powder post beetles. During their tour the plaintiff did not observe any structural damage, or *274 any problems with the sills. Although it had been raining the day before, and possibly that day, no water was in the basement at the time of the inspection.
After touring the house, DiMuro completed his inspection report, checking boxes and entering comments on the form. With respect to the components in the basement, he gave “acceptable” ratings to the floor, sills, joist, and basement stairs. He gave “functional” ratings to the main support beams, support columns, and subfloor, but also checked the box marked “contractor” as to each of these items, indicating that a contractor should be consulted. He checked “contractor” as to the foundation. The only basement item marked “not accessible” was the bulkhead door. In written comments, Dimuro noted “water stains” in the basement, as well as “white efflorescence” on foundation walls as a sign of water penetration, and indicated that “Black Paw suggests that you consult with the owner about the amount and frequency of water in the basement. The amount of water cannot always be determined at the time of inspection.” He also wrote in a recommendation to consult a contractor regarding the main support beam and support columns. DiMuro also checked “contractor” with respect to a number of features in other parts of the properly, including the walkways, driveways, retaining wall, hot water heaters, wiring service box, first-floor kitchen walls, windows and sink, uneven floors throughout, and first-floor bathroom sink.
The plaintiff reviewed the inspection report and asked some questions. She asked DiMuro whether she should be concerned that the floors were not level. He responded, according to her deposition testimony, that the condition is common in old houses, and that “this was a solid little house, that wasn’t going anywhere, that it had been here a hundred years and he didn’t think it was going anywhere.” The plaintiff then asked the seller whether the house had ever had any water damage, problems with rodents or bugs, or major structural problems; the seller responded in the negative.
The plaintiff was unconcerned about the items noted in the report as needing repair or consultation with a contractor, viewing each as “fixable” and “not so expensive,” or “things that I knew that the problem was.” She did not consult a contractor prior to the closing. She obtained an agreement from the sellers to install circuit breakers and an electrical outlet; other than that, she made no effort at further negotiation, and proceeded to close the purchase, at the previously agreed price, on January 22, 2003.
In late February 2003, after a heavy snow, the plaintiff heard water dripping in the basement. Upon investigating, she observed water coming into the front left comer of the house, over the sill. The location of the water penetration was not where DiMuro had pointed out water stains. She felt the sill, and determined “that it was completely saturated with water and that it was just completely rotted.” She felt panicked, cried, and called her brothers for assistance. By the end of February, the plaster walls in the first floor rental apartment had caved in due to water damage. The tenant moved out, resulting in a loss of rental income in the amount of $650 per month.
The plaintiff attempted to contact Black Paw, both by telephone and by letter addressed to its principal, Matthew Simpson. Black Paw did not respond. According to.the plaintiffs affidavit, “Black Paw’s employees assured me that Black Paw carried liability insurance, but refused to tell me who their insurer was, or how to file an insurance claim.” The plaintiffs attorney then sent a demand letter pursuant to G.L.c. 93A, dated April 21, 2003. Black Paw’s attorney responded, by letter dated May 5,2003, denying liability.
After consultation with a contractor, the plaintiff engaged a structural engineer, Arthur Choo, who provided a report, dated June 12, 2003, describing the damage and necessary repairs. She then obtained an estimate for the work from Healey Construction, dated June 20, 2003, in the amount of $67,000.
The plaintiff filed this action on July 17, 2003. Her complaint alleges, in substance, that she engaged Black Paw because it held itself out as experienced and knowledgeable, that DiMuro assessed the condition of the sills as “acceptable,” that she relied on that evaluation, that she later discovered “that the structural integrity of the home was compromised by a plainly-visible, severely decayed sill,” and that Black Paw never responded to her efforts at contact. Based on those facts, the complaint she sets forth five counts against both defendants, as follows: violation of G.L.c. 93A (count I); breach of contract (count II); intentional and/or negligent misrepresentation (count III); negligence (count IV); and negligent infliction of emotional distress (count V). The complaint seeks damages for the costs of repairs, as well as treble damages and attorneys fees pursuant to G.L.c. 93A. At her deposition, the plaintiff also asserted damages based on lost rental income, lost work time, and the engineer’s fee.
An affidavit of Matthew Simpson, principal of Black Paw, filed in connection with proceedings on a request for preliminary injunction, expresses his opinion that the inspection was performed in accordance with applicable standards, that “the inspector obviously could not see water coming into the basement and the sill was not saturated with water” until “after extraordinary weather conditions,” and that the inspection report should have alerted the plaintiff to seek advice from a contractor. Simpson provides the additional information that Black Paw carries insurance with a $3,000 deductible, and that he elected not to report the claim to the insurer because “(flhere is no way I can determine if the plaintiff has a reasonable claim for more than the deductible,” and to spare Black Paw the risk of “having its coverage canceled or possibly having its premiums increased to such an amount that it will be too costly to have coverage.”
*275 DISCUSSION
This court grants summaiy judgment where there are no genuine issues of material fact and where the summary judgment record entitles the moving party to judgment as a matter of law. See Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Mass.RCiv.P. 56(c). The moving party bears the burden of demonstrating that there is no genuine issue of material fact on every relevant issue. See Pederson v. Time, Inc., 404 Mass. 14, 17 (1989). A party moving for summaiy judgment who does not bear the burden of proof at trial may demonstrate the absence of a triable issue either by submitting affirmative evidence negating an essential element of the nonmoving party’s case, or by showing that the nonmoving party has no reasonable expectation of proving an essential element of its case at trial. See Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991); Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991). Once the moving party establishes the absence of a triable issue, the party opposing the motion must respond with evidence of specific facts showing the existence of a genuine dispute. See Pederson v. Time, Inc., 404 Mass. at 17.
1.Counts II and IV: Breach of Contract and Negligence
Counts II and IV of the complaint allege, in substance, that DiMuro failed to perform the inspection in accord with the standards applicable to a reasonable professional home inspector. Although count II casts this claim as a breach of contract, and count IV as negligence, the claim asserted in each is substantively identical.[1] The contract gave rise to a duty to meet the standard of a reasonable professional home inspector, and the failure to meet that standard constitutes negligence.
The defendants’ argument with respect to these counts is that, had the plaintiff followed DiMuro’s advice to consult a contractor, “presumably the contractor would have investigated the entire structure, including the sills,” and the harm would have been avoided. The Court cannot grant summary judgment based on presumptions. On the record presently before the Court, what a contractor would have done if consulted with reference to the conditions identified in the report is a matter of speculation. The plaintiffs testimony as to the conditions she found in the sills in February is sufficient to warrant an inference that careful examination of the sills by aprofessional home inspector in November would have identified rot. That inference, together with the plaintiffs testimony that she would not have bought the house if informed of any major structural defect, would support a finding of liability for negligence. Accordingly, these counts will stand for trial.
2.Count III: Intentional and/or Negligent Misrepresentation
Count III alleges that DiMuro falsely represented to the plaintiff that “all visible structural members were in acceptable condition,” that he made such representations “knowingly, negligently, or with reckless disregard of their truth or falsity,” and that the plaintiff relied on such representations to her detriment. On this basis, count III claims intentional and/or negligent misrepresentation.
To the extent that this claim alleges negligence, it duplicates the negligence claim asserted in count IV. If DiMuro failed to exercise due care in evaluating the house and conveying his findings to the plaintiff, and if that failure caused her harm, he is liable in negligence; casting that claim as misrepresentation adds nothing. As to the claim of intentional or reckless misrepresentation, the record provides nothing to show either knowledge or recklessness. See Christian v. Mooney, 400 Mass. 753, 764 (1987). Nor does the record show any intent by DiMuro to induce reliance by the plaintiff on any representation regarding the condition of the sills. Certainly DiMuro expected that the plaintiff would rely on his evaluation of the house, as expressed in the report and conveyed orally, but nothing in the record suggests that DiMuro had any intention to induce the plaintiff to purchase the property, or any interest in whether she did so or not. See id. The defendants are entitled to judgment as a matter of law as to count III.
3.Count IV: Negligent Infliction of Emotional Distress
Count IV alleges that the plaintiff suffered “severe emotional distress, severe emotional upset and severe turmoil” as a result of her unanticipated losses arising from the defendants’ breach of duty. The only evidence offered to support this allegation is the plaintiffs deposition testimony that she panicked and cried when she discovered the rotten sills.[2] That evidence falls well short of the showing required to sustain a claim of negligent infliction of emotional distress. See Sullivan v. Boston Gas Co., 414 Mass. 129, 137-39 (1993) (requiring “objective corroboration” of emotional distress, generally by expert testimony). The defendants are entitled to judgment as a matter of law on count V.
4.Count I: G.L.c. 93A
Count I alleges violation of G.L.c. 93A based on the allegation that the defendants’ “actions and omissions,” as set forth in the factual allegations of the complaint, “constitute unfair or deceptive acts or practices, which acts or practices were willful and knowing.” The evidence offered, as recited supra, does not support this claim. As discussed, the evidence suffices to show negligence, but not any intentional or reckless misrepresentation. Mere negligence does not violate c. 93A. See Meyer v. Wagner, 429 Mass. 410, 424 (1999).
In response to the defendants’ motion, the plaintiff asserts four additional theories to support her c. 93A claim. First, she points out that Black Paw did not exercise its option under the contract to investigate *276 and evaluate her claim, and to remedy the claim by repairing the defective condition. The point is correct on the record, but provides no support for a c. 93A claim. The contract gives Black Paw a right to do these things at its option, but imposes no obligation on it to do so, nor has the plaintiff identified any other source of any such obligation.
The plaintiff next points out that the defendants did not respond to her efforts to contact them, and did not offer any settlement in response to her attorney’s demand. She characterizes that inaction as “oppressive or otherwise unconscionable,” within the meaning of 940 C.M.R. §3.16(1), in which the Attorney General has defined unfair or deceptive practices. She points to no contractual provision or other authority requiring the defendants to respond to her contacts or to offer settlement, and none appears. What the record reveals is simply that the plaintiff asserted negligence on the part of the defendants, and they disagreed. Their failure to respond prior to her attorney’s letter may have been rude, but was not oppressive or unconscionable.
Her next theory invokes 940 C.M.R. §3.16(2), which defines as unfair or deceptive the failure of “any person” subject to c. 93A to “disclose to a buyer or prospective buyer any fact, the disclosure of which may have influenced the buyer or prospective buyer not to enter into the transaction.” This theory fails for the same reason as the misrepresentation claim; there is no evidence that the defendants had knowledge of the defective condition of the sills. The failure to disclose that condition, on the evidence presented in the record, may have been negligent, but it was not unfair or deceptive.
Finally, the plaintiff raises a theory that was not and could not have been alleged in the complaint, since it arises from events after suit was filed; She contends that Black Paw’s refusal to submit her claim to its liability insurer, in violation of G.L.c. 112, §225, was a violation of c. 93A The lack of pleading could be cured by amendment, if appropriate. As will be explained, however, such amendment would be premature.
Chapter 112, §225, which became effective on November 9, 2000, requires licensed home inspectors to maintain liability insurance, and further requires that an inspector “promptly report to the insurance company any complaint filed against either the inspector or the inspector’s company in a court of competent jurisdiction when the claim in the complaint is greater than the deductible on the inspector’s errors and omissions insurance policy.” The evidence in this record establishes a clear violation of this provision by Black Paw.[3] The statute imposes an unequivocal requirement that a home inspector report a claim to its insurer whenever the claim exceeds the deductible; it does not empower the home inspector to evaluate the merits of the claim, and decline to report based on its judgment as to likely recovery. The plaintiffs claim, as Black Paw has known at least since it received service of the complaint, is for some $67,000 in repair costs, and other damages, well above the $3,000 deductible. Black Paw was required by statute to report the claim to its insurer, and its failure to do so was an unfair and deceptive act in violation of G.L.c. 93A. See 940 C.M.R. §3.16(3) (defining as violation of c. 93A any “failure to comply with existing statutes, rules, regulations, or laws, meant for the protection of the public’s health, safety, or welfare . . . intended to provide the consumers of this Commonwealth protection”). See Varney v. Simpson, 12 Mass. L. Rptr. 308 (2000) (finding c. 93A violation in failure to report claim to insurer prior to enactment of statutory requirement, where home inspection company advertised itself as fully insured).[4]
The occurrence of a violation, however, is not in itself enough to support recovery. The plaintiff must prove that the violation has caused her some harm. See Lord v. Commercial Union, 60 Mass.App.Ct. 309, 317 (2004). Nothing in the evidence offered provides such proof, nor could the plaintiff be in a position to prove harm at this stage. The plaintiff may suffer harm in the future from the failure to report the claim, if she recovers judgment against the named defendants, and is unable to collect the judgment. See Varney, supra, at 4. If that occurs, she will have a cause of action under c. 93A. She does not now. Accordingly, count I will be dismissed without prejudice.[5]
CONCLUSION AND ORDER
For the reasons stated, the Defendants’ Motion for Summary Judgment is ALLOWED as to counts I, IE, and V, and DENIED as to counts II and IV. Dismissal of count I shall be without prejudice; dismissal of counts III and v. shall be with prejudice.

Theoretical differences exist between breach of contract and common-law negligence, particularly with respect to the measure of damages. The present motion does not present any issue as to the measure of damages, nor does it assert any bar to the damages claimed based on the contractual waiver of consequential damages.

The Court disregards unsupported assertions in the plaintiffs memorandum.

Nothing in the record indicates that DiMura had any involvement in the decision whether to make an insurance claim.

The home inspection company involved in that case was Black Paw, and the named defendant was Matthew Simpson, the defendants’ affiant in this case. The notice Simpson received from the decision in Varney would seem to bear on the issue of whether the violation here was knowing and wilful, for purposes of multiplication of damages.

In Varney, the Court left the c. 93A claim pending, awaiting resolution of the underlying claim. The Court does not adopt that approach here, because it appears likely to lead to unnecessary procedural complexity, particularly in the event of an appeal from a judgment on the underlying claim. The c. 93A claim will accrue, if it ever does, and the statute of limitations will begin to run, at such time as the defendants fail to pay a final judgment on the underlying claim.